UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALTAMONTE PEDIATRIC
ASSOCIATES, P.A.,

       Plaintiff,

v.                        Case No. 8:20-cv-604-T-33JSS

GREENWAY HEALTH, LLC,

       Defendant.

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Greenway Health, LLC's Motion to Dismiss Complaint (Doc. # 36), filed on May 29, 2020. Plaintiff Altamonte Pediatric Associates, P.A., responded on June 12, 2020. (Doc. # 47). For the reasons set forth below, the Motion is granted in part and denied in part.

**I.   Background**

Altamonte is a pediatric healthcare provider that was in the market for certified Electronic Health Record ("EHR") software. (Doc. # 1 at ¶ 1). EHR software "offers a variety of features relevant to the practice of healthcare, including . . . access to patient medical records, demographics, care history and allergies[,] electronic communication with

1

patients[,] and electronic placement of prescriptions." (Id.). Beyond these features, healthcare providers are incentivized to use EHR software through the federal Meaningful Use program. (Id. at ¶ 2). The program provides "monetary incentive payments through Medicare and Medicaid" to those who utilize certified EHR software. (Id.). A significant part of the determination of whether healthcare providers receive these benefits includes if the EHR software utilized is certified, meaning that it complies with federal regulations and "actually meets the standards of the Meaningful Use program." (Id. at ¶¶ 2, 22, 31-33).

Beginning in 2013, Altamonte contracted with Greenway to obtain certified EHR software for its pediatric practice. (Id. at ¶ 3). Greenway represented to Altamonte and its other customers that the software in question, Intergy, "satisfied the requirements of the Meaningful Use program." (Id.). This promise was included in Greenway's standard-form contract. (Id. at ¶ 4). Specifically, the contract provides that Greenway would "continue to support the Subscription Services, including providing upgrades and updates if and when available" and "cause the Subscription Services to

remain compliant with federal regulations (including those promulgated by the Centers for Medicare and Medicaid Services) establishing healthcare industry standards." ("Guaranty clause") (Id.).[1] In return, Altamonte "paid tens of thousands of dollars to Greenway for Intergy and related services." (Id. at ¶ 3).

However, Altamonte alleges that "Intergy does not meet the requirements of the Meaningful Use program and has not met them for years." (Id. at ¶ 5). Following a 2017 Department of Justice investigation into Prime Suite, a separate Greenway-owned EHR software, Greenway ran tests on its three "core EHR products: Prime Suite, Intergy, and SuccessEHS." (Id. at ¶ 6). "All three EHRs failed these tests," (Id.), and the government's investigation into Prime Suite resulted in

---

1. Altamonte alleges that this is reiterated in the Software License Agreement, which provides: "[Greenway] warrants that, for the Software Warranty Period, the [Intergy] software, as updated and used in accordance with the Documentation . . . will operate in all material respects in conformity with the functional specifications in the Documentation." ("Documentation clause") (Doc. # 1 at ¶ 45, 120). Altamonte avers that the Documentation clause incorporates Greenway's repeated assurances "that Intergy met the Meaningful Use program's certification requirements and would enable users to attest to meaningful use of certified EHR technology and take advantage of incentive programs." (Id. at ¶ 45-48).

a $57 million settlement to resolve alleged violations of the False Claims Act for "intentionally rigg[ing] the software to cheat on testing during the certification process." (Id. at ¶ 7). The government further "alleged that Prime Suite had not been compliant with the Meaningful Use program for at least between January 1, 2014, and December 31, 2017." (Id.). Although the settlement between Greenway and the government did not pertain to Intergy, Altamonte alleges that certain contemporaneous disclosures by Greenway of similar flaws in both Prime Suite and Intergy "support[] an inference that the two products share the same code or design and suffer from the same basic deficiencies." (Id. at ¶ 8).

In 2018, Greenway began disclosing certain flaws in Intergy and the other software to its customers. (Id. at ¶¶ 6, 51-52). In 2018 and 2019, Greenway then "told customers they could not use the software to attest to the certified use of an EHR when reporting to Medicare and Medicaid." (Id. at ¶¶ 6, 58-61, 65-68, 72). Because of these flaws, Altamonte employees had to spend "numerous hours addressing . . . errors in Intergy" in 2018 and 2019. (Id. at ¶ 9). Altamonte then "submitted reports for the 2018 calendar year to Medicaid in

2019." (Id.). However, following Altamonte's submission of these reports to Medicaid, Greenway announced additional errors in Intergy, "which prevented eight of Altamonte['s] . . . pediatricians and nurses from qualifying for $68,000 in incentive payments." (Id.).

Altamonte filed this class action in this Court on March 13, 2020. (Doc. # 1). Altamonte seeks class certification on behalf of other similarly situated Intergy customers. (Id. at ¶ 111). Altamonte also proposes two subclasses: (1) for class members whose contracts with Greenway include the Guaranty clause, and (2) for class members whose contracts include the Documentation clause. (Id. at ¶ 112-13). The complaint includes claims against Greenway for violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count I), common law fraud (Count II), negligent misrepresentation (Count III), and breach of contract (Counts IV and V). (Doc. # 1).

On May 29, 2020, Greenway moved to dismiss the complaint for failure to state a claim, (Doc. # 36), and Altamonte has responded. (Doc. # 47). The Motion is now ripe for review.

## II. __Legal Standard__

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the

6

complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

The Federal Rules of Civil Procedure accord a heightened pleading standard to claims for fraud, requiring that they be pled with particularity. Fed. R. Civ. P. 9(b). Under Rule 9(b), the "plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)). This "requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." W. Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

III. **Analysis**

Greenway seeks to dismiss nearly all counts of the complaint. The Court will address each claim in turn.

A.   **FDUTPA**

Greenway moves to dismiss Count I, Altamonte's FDUTPA claim, on the following bases: (1) Altamonte fails to allege an actionable defect as required by FDUTPA; (2) Altamonte's claim "is nothing more than an improper attempt to recast a breach of contract claim into an [FDUTPA] claim"; (3) Altamonte has not met the heightened Rule 9(b) pleading standard; (4) Altamonte has failed to plead the elements of an "unfair" trade practice under FDUTPA; and (5) Altamonte has not properly pled FDUTPA damages. (Doc. # 36 at 22-24).

To establish a cause of action under FDUTPA, a plaintiff must sufficiently allege the following three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (quoting City First Mortg. Corp. v. Barton, 988 So.2d 82, 86 (Fla. 4th DCA 2008)). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends

8

established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (quoting Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006)).

Courts in this District are split as to whether a claim for relief under FDUTPA must also meet Rule 9(b)'s heightened pleading standard.[2] Compare Allstate Ins. Co. v. Auto Glass Am., LLC, 418 F. Supp. 3d 1009, 1021-22 (M.D. Fla. 2019) ("As a threshold matter, this Court declines to impose the heightened pleading standard set forth in Rule 9(b)[.]") with Blair v. Wachovia Mortg. Corp., No. 5:11-cv-566-Oc-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) ("[T]his Court concludes that where the gravamen of the [FDUTPA] claim sounds

_____

2. Courts in other districts in Florida are similarly split. Compare Harris v. Nordyne, LLC, No. 14-CIV-21884-BLOOM/Valle, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) ("FDUTPA claims seek a remedy for conduct distinct from traditional common law torts such as fraud. As such, the uniqueness of the cause of action place[s] it outside the ambit of Rule 9(b)."), with Llado-Carreno v. Guidant Corp., No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (requiring that a FDUTPA claim be pled under the heightened Rule 9(b) standard).

in fraud, as here, the heightened pleading standard of Rule 9(b) would apply.").

The trend has been for courts to apply the Rule 9(b) standard when FDUTPA claims sound in fraud. See, e.g., Hummel v. Tamko Bldg. Prods., No. 6:15-cv-910-Orl-40GJK, 2015 WL 12843907, at *2-3 (M.D. Fla. Nov. 6, 2015) (finding that the plaintiff's FDUTPA claim had to be pled with particularity because it was primarily based on allegations sounding in fraud); Casey v. Fla. Coastal Sch. of Law, Inc., No. 3:14-cv-1229-J-39PDB, 2015 WL 10096084, at *10 (M.D. Fla. Aug. 11, 2015) (recognizing this trend). "Absent an allegation of fraudulent conduct," however, courts typically do not apply the heightened pleading requirement. Total Containment Sols., Inc. v. Glacier Energy Servs., No. 2:15-cv-63-FtM-38CM, 2015 WL 3562622, at *2 (M.D. Fla. June 5, 2015).

Here, Altamonte alleges that Greenway's false statements and concealment of Intergy's certification under the Meaningful Use program constitute an unfair and deceptive act and practice that misled Altamonte and other consumers to continue to contract with Greenway and pay inflated prices for Intergy, in turn causing Altamonte to lose incentive

10

payments under the Meaningful Use program. (Doc. # 1 at ¶ 127-28). Although Count I of Altamonte's complaint does not specifically allege *actual* damages, a fair reading of the complaint demonstrates that these lost incentive payments amount to $68,000 in alleged actual damages, among other potential damages. (Doc. # 1 at ¶ 90-94).

Given the above allegations of the complaint, Altamonte's FDUTPA claim sounds in fraud as it avers only false statements and misrepresentations by Greenway. (Doc. # 1 at ¶ 127). Therefore, Rule 9(b)'s heightened pleading standard applies. See PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., No. 3:12-cv-1366-J-20JBT, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 28, 2013) ("[T]he Middle District of Florida has consistently held that those FDUTPA claims that hinge on allegations of misrepresentation are 'grounded in fraud' and are therefore governed by Rule 9(b)'s heightened pleading requirements.").

In its FDUTPA claim, Altamonte does not allege the specific time, place, or person responsible for the allegedly fraudulent statements, as required by Rule 9(b). Am. Dental, 605 F.3d at 1291. Rather, Altamonte refers to other parts of

11

its complaint for the proposition that "[t]hroughout the term of [Altamonte's] . . . agreement with Greenway, Greenway made multiple claims that Intergy was compliant with the certification criteria of the Meaningful Use program[.]" (Doc. # 1 at ¶ 83). These conclusory allegations do not meet the heightened Rule 9(b) pleading standard.[3] See Sol. Z v. Alma Lasers, Inc., No. 11-cv-21396-CIV-LENARD/O'SULLIVAN, 2012 WL 13012765, at *3 (S.D. Fla. Jan. 25, 2012) (dismissing a conclusory FDUTPA claim that did not specifically allege

_____

3. Giving Altamonte's complaint a generous reading, it argues that some evidence of Greenway's FDUTPA violation is "not publicly available" and that Altamonte is unable to "determine the precise dates, locations, or speakers of" the misrepresentations, so that it need not plead these facts with particularity. (Doc. # 1 at ¶ 34). However, to qualify for a more lenient pleading standard, the information must be "in [the] exclusive control of the defendant and _cannot be possessed by other entities_." Davis v. Bos. Sci. Corp., No. 2:17-cv-682-FtM-38CM, 2018 WL 3155683, at *4 (M.D. Fla. June 28, 2018) (emphasis added) (quoting Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co., No. 6:07-cv-222-Orl-19KRS, 2007 WL 3457585, at *3 (M.D. Fla. Nov. 14, 2007)); see also United States ex rel. Clark v. Tallahassee Surgical Assocs., P.A., No. 4:09-cv-411-RH/WCS, 2010 WL 11650951, at *2 (N.D. Fla. Dec. 15, 2010) ("[T]o invoke the exception, there must not be alternative avenues for obtaining information[.]" (citation omitted)). Altamonte admits that these certifications are also within the certifying bodies' control. (Doc. # 1 at ¶¶ 21, 26, 34). Therefore, Altamonte cannot benefit from this more lenient pleading standard.

who made the alleged false statements, when and where they were made, and the content thereof); Fellner v. Cameron, 2:10-cv-155-FtM-99SPC, 2012 WL 1648886, at *3 (M.D. Fla. May 10, 2012) (finding a fraud claim insufficiently pled where the plaintiff did not "identify *specific* misrepresentations in the transaction documents or related communications," or the dates of the transactions or communications (emphasis in original)).

In its response to Greenway's motion to dismiss, Altamonte argues that "because Greenway's fraud was a prolonged multi-act scheme, [it] need only plead the overall nature of the fraud and then . . . allege with particularity one or more illustrative instances of the fraud." (Doc. # 47 at 17) (quotations and citations omitted). However, Altamonte fails to particularly plead any such examples (Doc. # 1), and thus cannot benefit from this exception. See Fogle v. IBM Corp., No. 8:19-cv-2896-T-33JSS, 2020 WL 1873567, at *5 (M.D. Fla. Apr. 15, 2020)("Even under the relaxed requirement, however, a plaintiff is still required to allege at least some *particular* examples of fraudulent conduct to lay a foundation for the rest of the alleged fraud." (emphasis

13

added) (citing <u>Burgess v. Religious Tech. Ctr., Inc.</u>, 660 F.

App'x 657, 663 (11th Cir. 2015))). Therefore, Greenway's

Motion is granted with respect to Count I, which is dismissed

without prejudice. <u>See</u> <u>Fidelity Nat'l Fin., Inc. v.</u>

<u>Attachmate Corp.</u>, No. 3:15-cv-1400-HES-PDB, 2017 WL 3726687,

at *4 (M.D. Fla. Mar. 1, 2017) (dismissing an FDUTPA claim

that was not pled with particularity); <u>Hummel</u>, 2015 WL

12843907 at *3 (dismissing without prejudice).

### B.   <u>Common Law Fraud</u>

Next, Greenway moves to dismiss Count II, Altamonte's

common law fraud claim, arguing that (1) it is barred by the

independent tort doctrine, (2) Altamonte has failed to plead

it with particularity, and (3) Altamonte has failed to allege

other essential elements of fraud. (Doc. # 36 at 14-19).

Under Florida's independent tort doctrine, "it is well

settled that a plaintiff may not recast causes of action that

are otherwise breach-of-contract claims as tort claims."

<u>Spears v. SHK Consulting and Dev., Inc.</u>, 338 F. Supp. 3d 1272,

1279 (M.D. Fla. 2018) (quoting <u>CEMEX Constr. Materials Fla.,</u>

<u>LLC v. Armstrong World Indus., Inc.</u>, No. 3:16-cv-186-J-34JRK,

2018 WL 905752, at *10 (M.D. Fla. Feb 15, 2018)). However,

14

fraud that is "separate and apart from the performance of the contract" is not barred by the doctrine. CEMEX, 2018 WL 905752, at *10-11.

"Florida courts recognize the specific intentional tort of fraud in the inducement as an independent fraud claim that can be brought despite the existence of contractual privity." Id. at 11 (citing Dantzler Lumber & Exp. Co. v. Bullington Lumber Co., Inc., 968 F. Supp. 1543, 1546 (M.D. Fla. 1997)); see also Glob. Quest, LLC v. Horizon Yachts, Inc., 849 F.3d 1022, 1030-31 (11th Cir. 2017) (explaining that a fraudulent inducement claim may be considered independent of a breach of contract claim).

Here, Altamonte's complaint alleges that Greenway "falsely stat[ed] to Altamonte . . . that Intergy currently satisfied the certification criteria of the Meaningful Use program," made "false statements to its accredited certification body in order to fraudulently obtain an unearned certification of compliance with the criteria of the Meaningful Use program," and "conceal[ed] from Altamonte . . . the truth about its software's failure to satisfy the certification criteria of the Meaningful Use program." (Doc.

# 1 at ¶ 129). Altamonte further alleges that this fraud "induced Altamonte . . . into entering into and/or renewing contracts that they otherwise would not have made." (Id. at ¶ 133).

Although in its response, Altamonte attempts to couch its fraud claim as one for fraudulent inducement, it fails to state clearly, let alone with particularity, that any fraud occurred before Altamonte and Greenway first contracted in 2013. (Id.). In fact, Altamonte's earliest allegation stems from 2014, based on the Department of Justice's allegation that a separate EHR software owned by Greenway, Prime Suite, was not compliant with the Meaningful Use program beginning in January 2014. (Id. at ¶ 7). However, Altamonte and Greenway began contracting in 2013. (Id. at ¶ 3). Therefore, Altamonte's claim is better characterized as fraud during performance of the contract. See CEMEX, 2018 WL 905752, at *12 (denying a motion to dismiss with respect to actions occurring before a contract but granting the motion with respect to actions that arose during the contract). This claim is thus barred by the independent tort doctrine to the extent that it arises out of fraud that occurred during the

contractual period.[4] <u>See</u> <u>Reagan v. Wireless Corp. v. Apto</u>
<u>Sols., Inc.</u>, No. 18-cv-61147-BLOOM/Valle, 2018 WL 4901127, at
*2-4 (S.D. Fla. Oct. 9, 2018) (barring a breach-of-contract
claim couched as fraudulent inducement).

To the extent that Altamonte alleges that Greenway
fraudulently induced it prior to entering each yearly
contract since 2013, Altamonte has not done so with
particularity. As set forth above regarding the FDUTPA claim,
Altamonte has not alleged the specific time each statement
was made prior to and separate from these contracts, as
required by Rule 9(b)'s heightened pleading standard. <u>See</u> <u>Am.</u>

---

4. Altamonte argues that its common-law fraud and negligent
misrepresentation claims can be pled in the alternative,
despite the independent tort doctrine. (Doc. # 47 at 22).
However, the cases Altamonte cites either were decided before
the 11th Circuit reiterated the doctrine's application in
<u>Lamm v. State Street Bank and Trust</u> in 2014 or did not decide
whether the doctrine applied. <u>See</u> <u>F.D.I.C. ex rel. Colonial</u>
<u>Bank v. Pearl</u>, No. 8:12-cv-1813-T-30TBM, 2013 WL 1405941
(M.D. Fla. Apr. 8, 2013) (discussing the economic loss rule
prior to <u>Lamm</u>); <u>F.D.I.C. v. Howard</u>, No. 3:12-cv-578-J-34JRK,
2013 WL 12097642 (M.D. Fla. Sept. 5, 2013) (not invoking the
independent tort doctrine or the economic loss rule before
<u>Lamm</u>); <u>Coast to Coast Supply Sols., LLC v. Bank of Am., Corp.</u>,
No. 20-cv-606-T-60AEP, 2020 WL 2494487, at *2 (M.D. Fla. May
14 2020) (not deciding whether the independent tort doctrine
actually applied); <u>see also</u> <u>Lamm v. State St. Bank & Tr.</u>, 749
F.3d 938, 947 (11th Cir. 2014) (discussing the doctrine). It
would be contrary to the basic premise of the independent
tort doctrine to allow such pleadings in the alternative.

Dental, 605 F.3d at 1291 ("[A] plaintiff must allege . . . the time, place and person responsible for the statement[.]" (quoting Brooks, 116 F.3d at 1380-81)). Therefore, Greenway's Motion is granted with respect to Count II, which is dismissed without prejudice. See Krinsk v. SunTrust Banks, Inc., No. 8:09-cv-909-T-27EAJ, 2010 WL 11475608, at *8 (M.D. Fla. Jan. 8, 2010) (dismissing an insufficiently pled fraud claim without prejudice).[5]

## C.   **Negligent Misrepresentation**

Greenway next moves to dismiss Count III, Altamonte's

---

5. In its response to Greenway's Motion, Altamonte argues that "because Greenway's fraud was a prolonged multi-act scheme, [it] need only plead the overall nature of the fraud and then . . . allege with particularity one or more illustrative instances of the fraud." (Doc. # 47 at 17) (quotations and citations omitted). But, just as with the FDUTPA claim, Altamonte fails to particularly plead any examples of fraud before the contractual terms themselves (Doc. # 1), and thus cannot benefit from this sort of exception. See Fogle, 2020 WL 1873567, at *5 ("Even under the relaxed requirement, however, a plaintiff is still required to allege at least some particular examples of fraudulent conduct to lay a foundation for the rest of the alleged fraud." (citation omitted)). Furthermore, when these contracts were entered into is not "peculiarly within [the] defendant's knowledge or control." See Davis, 2018 WL 3155683 at *4 (explaining that this lower pleading standard only applies "where the information is in the exclusive control of the defendant and cannot be possessed by other entities" (emphasis added) (citation omitted)).

claim for negligent misrepresentation, arguing that (1) it is barred by the independent tort doctrine, (2) Altamonte failed to plead it with particularity, and (3) because "it is unclear what type of negligent misrepresentation claim [Altamonte] intends to allege." (Doc. # 36 at 14-20).

Under Florida law, "for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach." Perez v. Scottsdale Ins. Co., No. 19-cv-22346-GAYLES, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020). Additionally, plaintiffs must plead negligent misrepresentation under the heightened Rule 9(b) standard. Lamm v. State St. Bank & Tr., 749 F.3d 938, 951 (11th Cir. 2014); see also Kling v. Jon Bourbeau, P.A., No. 15-cv-22439-COOKE/TORRES, 2016 WL 8730199, at *4 (S.D. Fla. Apr. 25, 2016) ("[U]nder Florida law, the heightened pleading standard for fraud under [Rule 9(b)] applies to claims for negligent misrepresentation, which sound in fraud rather than negligence." (quoting Souran v. Travelers Ins. Co., 982 F.2d 1497, 1511 (11th Cir. 1993))).

19

Here, Altamonte simply reiterates the basis for its
fraud claim in arguing its claim for negligent
misrepresentation. (Doc. # 1 at ¶ 135-39). These claims are
only specifically pled with respect to Greenway's allegedly
false statements in its contracts. (Id.). For the reasons set
forth above regarding Altamonte's claims of fraud during
performance of the contract, its claim for negligent
misrepresentation during performance of the contract is also
barred by the independent tort doctrine. See Perez, 2020 WL
607145, at *3 (barring a negligent representation claim that
was not "independent" from the plaintiff's contractual
claims). Therefore, Greenway's Motion is granted with respect
to Count III and Altamonte's claim for negligent
misrepresentation is dismissed without prejudice. See Kelly
v. Lee Cty. RV Sales Co., No. 8:18-cv-424-JDW-JSS, 2018 WL
3126750, at *3 (M.D. Fla. June 26, 2018) (dismissing a claim
for negligent representation where the alleged statements
were made during "the performance of the contract" and thus
could not "be considered independent"); Kling, 2016 WL
8730199 at *4-5 (dismissing without prejudice a negligent-
misrepresentation claim that was not pled with

particularity).

D.   **Breach of Contract**

Finally, Greenway moves to dismiss Counts IV and V, Altamonte's claims for breach of contract. (Doc. # 36 at 8). Count IV of Altamonte's complaint relates to the Guaranty Clause, while Count V relates to the Documentation Clause. (Doc. # 1 at ¶ 140-47). Both counts also allege breaches of the implied covenant of good faith and fair dealing. (Id.). Greenway argues that Altamonte's claims for breach of the contract's Guaranty and Documentation clauses should be dismissed because the contract provides an "exclusive remedy" for any such claim, wherein Altamonte would be limited to receiving "a refund for the license fees paid for the [EHR] software." (Doc. # 36 at 10-14). Greenway then argues that Altamonte's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because the parties' contract disclaims such a covenant. (Id. at 9-10).

Under Florida law, to state a cause of action for breach of contract, the plaintiff must allege: "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." Textron Fin. Corp. v. Lentine

21

Marine Inc., 630 F. Supp. 2d 1352, 1356 (S.D. Fla. 2009)
(quoting Rollins, 951 So.2d at 876)). Greenway does not
dispute the existence of the contract, but rather argues that
the claims "should be dismissed because [they] are subject to
contractual limitations." (Doc. # 36 at 10). Altamonte
counters that the waiver in question applies only to a
separate agreement and not the Guaranty clause. (Doc. # 47 at
10-11).

Here, Altamonte has plausibly pled the existence of the
contractual clauses, which required that Intergy "remain
compliant with federal regulations (including those
promulgated by the Centers for Medicare and Medicaid
Services) establishing healthcare industry standards." (Doc.
# 1 at ¶¶ 90, 140-42). It has also sufficiently alleged a
breach of the contract when Greenway allegedly did not
"satisfy many requirements of the Meaningful Use program for
years," and resulting in damages in the form of lost incentive
payments, among other things. (Id.).

At this stage in the litigation, and given the contract's
potential ambiguity, the Court declines to determine whether
the limitation of liability provision applies to Altamonte's

breach of contract claims. See TYR Tactical, LLC v. Protective Prods. Enters., LLC, No. 15-cv-61741-BLOOM/Valle, 2015 WL 13655803, at *5 (S.D. Fla. Dec. 10, 2015) (refraining from deciding whether an ambiguous limitation of liability provision applied to certain damages at the motion-to-dismiss stage); see also Underwriters at Lloyds v. Fedex Freight Sys., Inc., No. 8:07-cv-212-T-EAJ, 2008 WL 763800, at *5 (M.D. Fla. Mar. 19, 2008) (finding it "premature . . . to determine the effect of a limitation of liability clause when that issue is . . . factually undeveloped at this stage"). Greenway may raise this issue again at the summary judgment stage.

Regarding Altamonte's claim for breach of the implied covenant of good faith and fair dealing, "Florida courts recognize an implied covenant of good faith and fair dealing in every contract." Shibata v. Lim, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) (citing Burger King Corp. v. C.R. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999); Cty. of Brevard v. Miorelli Eng'g, Inc., 703 So.2d 1049, 1050 (Fla. 1997)). "[T]o state a claim for breach of the implied covenant of good faith and fair dealing, plaintiffs must identify the specific contract term(s) giving rise to the implied duty of

23

good faith and also allege how defendants breach their implied duty, alleging facts different from those giving rise to the breach of contract claim." Watts-Robinson v. Anderson Reporting Servs., Inc., 3:11-cv-290-J-37JBT, 2011 WL 13295707, at *2 (M.D. Fla. Sept. 22, 2011) (quoting Stallworth v. Hartford Ins. Co., No. 3:06-cv-89-MCR/EMT, 2006 WL 2711597, at *6 (N.D. Fla. Sept. 19, 2006)).

"The duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." ACG S. Ins. Agency, LLC v. Safeco Ins. Co., No. 8:19-cv-528-T-36AAS, 2019 WL 8273657, at *8 (M.D. Fla. Dec. 16, 2019) (quoting Resnick v. AvMed, Inc., 693 F.3d 1317, 1319 (11th Cir. 2012)). Additionally, "a party cannot maintain a cause of action for breach of the implied covenant of good faith and fair dealing in derogation of the express terms of the underlying contract." Karp v. Bank of Am., N.A., No. 8:12-cv-1700-T-17MAP, 2013 WL 1121256, at *3 (M.D. Fla. Mar. 18, 2013) (quoting Burger King, 169 F.3d at 1318)).

24

Here, Altamonte alleges that Greenway breached the covenant of good faith and fair dealing implied in the Guaranty and Documentation clauses by, among other things, "failing to timely or reasonably redress non-compliant aspects of its software," "encouraging Altamonte . . . to attest for Meaningful Use incentive payments without informing them that Greenway was not compliant with the certification criteria of the Meaningful Use program," "failing to completely or timely disclose many of the problems with its software," and "recklessly failing to test Intergy with reasonable diligence during development of software code and updates." (Doc. # 1 at ¶¶ 142, 146).

These claims are both different from those alleged in Altamonte's other breach of contract claims and are tied to specific contractual provisions. And, for the same reasons discussed above regarding Altamonte's breach of contract claims, the Court declines to decide at this stage of the litigation whether an ambiguous waiver or liability limitation provision applies to the implied covenant of good faith and fair dealing under the Guaranty and Documentation clauses. Thus, Altamonte has plausibly pled a claim for breach

of the implied covenant of good faith and fair dealing. See OCULUS Optikgerate GmbH v. Insight Instruments, Inc., No. 12-14394-CIV-GRAHAM/LYNCH, 2013 WL 12095533, at *3 (S.D. Fla. Feb. 14, 2013) (finding a claim for breach of the implied covenant of good faith and fair dealing sufficiently pled where the plaintiff's claim was "not duplicative of those within its breach of contract claim").

Therefore, Greenway's Motion is denied as to Counts IV and V of Altamonte's complaint. See Modern Gaming, Inc. v. Malone, No. 6:10-cv-182-Orl-28DAB, 2010 WL 724434, at *3 (M.D. Fla. Feb. 24, 2010) (denying motion to dismiss where the plaintiff had sufficiently stated a claim for breach of contract); Tampa Bay Health Partners, LLC v. Diversus Mgmt., Inc., No. 8:17-cv-2922-T-26JSS, 2018 WL 454223, at *2 (M.D. Fla. Jan. 17, 2018) (allowing a claim for breach of the implied covenant of good faith and fair dealing to proceed after concluding that a valid breach of contract claim existed).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Greenway Health, LLC's Motion to Dismiss (Doc.

26

# 36) is **GRANTED** with respect to Counts I, II, and III and **DENIED** with respect to Counts IV and V.

(2)   Counts I, II, and III are **DISMISSED** without prejudice.

(3)   Altamonte may file an amended complaint within 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>4th</u> day of September, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE