## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| ALTAMONTE PEDIATRIC ASSOCIATES, P.A., a Florida Corporation, <br><br> Plaintiff, <br><br> v. <br><br> GREENWAY HEALTH, LLC, a Delaware Limited Liability Company, <br><br> Defendant. | CIVIL ACTION <br><br> (<u>CLASS ACTION</u>) <br><br> **<u>DEMAND FOR JURY TRIAL</u>** <br><br> Case No. 8:20-cv-00604-VMC-JSS |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiff Altamonte Pediatric Associates, P.A. ("Altamonte Pediatric"), individually and on behalf of all others similarly situated, files this First Amended Class Action Complaint against Defendant Greenway Health, LLC ("Greenway") and respectfully asserts the following:

## I.    <u>INTRODUCTION</u>

1.    Established in 1974, Altamonte Pediatric has provided healthcare to children in Florida for more than 45 years.  Like many healthcare providers, Altamonte Pediatric desired certified Electronic Health Record ("EHR") software—a type of business software that offers a variety of features relevant to the practice of healthcare, including (without limitation) access to patient medical records, demographics, care history and allergies; electronic communication with patients; and electronic placement of prescriptions.

2.    Certification requirements for EHRs are defined by the Meaningful Use program, a federal program that sets nationwide standards for EHRs and provides monetary incentive payments through Medicare and Medicaid to encourage providers to use certified EHRs

1

(sometimes called certified EHR technology, or "CEHRT").  To obtain a certification for an EHR and market the EHR as certified, the selling EHR vendor must ensure that the EHR actually meets the standards of the Meaningful Use program, which are codified in federal regulations. Certification assures purchasers (typically physicians with no expertise in software) that an EHR has specific, critically important features and can be used to submit periodic reports to Medicare and Medicaid.

3.     Like hundreds or thousands of similarly situated Greenway customers, Altamonte Pediatric purchased licenses and paid monthly fees for the use of Intergy based on Greenway's representations and promises that Intergy satisfied the requirements of the Meaningful Use program.  In every year since Altamonte Pediatric entered into a contract with Greenway in 2013, Altamonte Pediatric paid tens of thousands of dollars to Greenway for Intergy and related services.

4.     Greenway's standard form contracts contain express promises that Intergy was and would remain Meaningful Use compliant.  For example, Altamonte Pediatric's contract with Greenway (then operating under the name "Vitera") contains the following express guarantee:

> "Guaranty. Vitera is committed to being a leader in the ambulatory [Health Information Technology] market. To that end, Vitera guarantees that during the Initial Subscription Services Term, Vitera will (1) continue to support the Subscription Services, including providing upgrades and updates if and when available, and (2) cause the Subscription Services to remain compliant with federal regulations (including those promulgated by the Centers for Medicare and Medicaid Services) establishing healthcare industry standards."

5.     Greenway has also made specific representations to Altamonte Pediatric that Intergy was and is an ONC-ATCB certified EHR that complies with the certification criteria adopted by the Secretary of Health and Human Services. Greenway made these representations to induce Altamonte to purchase Intergy, to continue to make payments to Greenway, to renew

its contract with Greenway, and to abstain from exercising rights against Greenway under the contract (including filing this lawsuit).

6.     Greenway also made specific representations to Altamonte Pediatric that Intergy's features complied with the Meaningful Use program and could be used for government reporting. Greenway made these representations prior to the execution of the agreement between the parties on September 30, 2013 and continued to make these representations to Altamonte throughout the contractual period. Greenway made these representations to induce Altamonte to purchase Intergy and continue to renew its license for Intergy.

7.     Contrary to Greenway's promises and uniform, express representations, however, Intergy does not meet the requirements of the Meaningful Use program and has not met them for years.

8.     Unbeknownst to Altamonte Pediatric and Greenway's other customers, the United States Department of Justice launched an investigation of Greenway's statements concerning the compliance of another Greenway EHR called Prime Suite in early 2017.  Greenway belatedly responded to this investigation by running tests in the second half of 2018 on all three of its core EHR products: Prime Suite, Intergy, and SuccessEHS.  All three EHRs failed these tests.  In the months that followed, Greenway disclosed a litany of hidden errors with all three products and told customers they could not use the software to attest to the certified use of an EHR when reporting to Medicare and Medicaid.

9.     In February 2019, Greenway and the Department of Justice announced that Greenway agreed to pay a stunning $57 million to settle the Government's claims that Greenway violated the False Claims Act.  On the same day, the Government filed a detailed complaint alleging that Greenway had knowingly made false statements to obtain a certification for Prime

Suite and intentionally rigged the software to cheat on testing during the certification process. The Government alleged that Prime Suite had not been compliant with the Meaningful Use program for at least between January 1, 2014 and December 31, 2017.

10.     Following the announcement of this settlement, Greenway continued to disclose additional hidden flaws in Intergy to Altamonte Pediatric and other customers.  These disclosures closely resemble contemporaneous disclosures regarding Prime Suite's flaws, supporting an inference that the two products share the same code or design and suffer from the same basic deficiencies.  Based on Greenway's disclosures alone, Intergy has failed to meet the certification requirements of the Meaningful Use program at least between January 1, 2017 and the present.

11.     Altamonte Pediatric and other similarly situated customers have been deprived of the fundamental benefit of their bargain with Greenway: software that fully complies with the nationwide standards for EHRs.  In 2018 and 2019, Altamonte Pediatric spent numerous hours addressing the errors in Intergy.  After altering work flows in response to Greenway's errors, Altamonte Pediatric submitted reports for the 2018 calendar year to Medicaid in 2019.  After these submissions were made, however, Greenway revealed still more errors, which prevented eight of Altamonte Pediatric's pediatricians and nurses from qualifying for $68,000 in incentive payments.

12.     During 2018 and 2019, Greenway assured Altamonte Pediatric and other similarly situated customers that it would timely fix Intergy.  Greenway also directly promised that it would compensate Altamonte Pediatric for the harms caused by Intergy's errors by making Altamonte Pediatric "whole."  Greenway has done neither.

13.     Immediately upon learning that Medicaid would not make payments for eight of its doctors and nurses due to Intergy's errors in October 2019, Altamonte Pediatric attempted to

4

resolve the issue with Greenway by submitting documents demonstrating that Greenway had caused Altamonte Pediatric to lose at least $68,000 in incentive payments.  Greenway waited over four months to even respond with an offer to pay less than half that amount.[1]

14.     Having attempted to resolve its disputes with Greenway, Altamonte Pediatric now seeks damages on behalf of itself and all others similarly situated for Greenway's breach of contract, fraud, and negligent misrepresentations.

## II.     PARTIES

### A.     Altamonte Pediatric Associates, P.A.

15.     Altamonte Pediatric is a Florida Corporation based in Altamonte Springs, Florida.

16.     Six doctors and eight nurses currently practice with Altamonte Pediatric.

17.     Altamonte Pediatric specializes in pediatric healthcare.

### B.     Greenway Health, LLC

18.     Defendant Greenway Health, LLC ("Greenway") is a Delaware Limited Liability Company.  Greenway previously operated under the name "Vitera Healthcare Solutions, LLC" between 2011 and April 2014.  Prior to using that name, Greenway operated under the name "Sage Software Healthcare."

19.     Greenway's principal business is the sale of, and provision of services relating to, EHR software.  Greenway's major EHR products are called Prime Suite, Intergy, and SuccessEHS.

---

[1] Under Federal Rule of Evidence 408(b), evidence of settlement offers and negotiations are admissible to "negate a contention of undue delay."  Although it is not necessary to negate such contentions at the pleading stage, Greenway has ignored that rule in motion to dismiss briefing in recent litigation against other customers.  Accordingly, factual details concerning Greenway's conduct in pre-suit settlement discussions are included in this Amended Complaint.

### III.     JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A)

because the amount in controversy exceeds $5,000,000.

21.     The Court has personal jurisdiction based on the forum selection clauses in

Greenway's contract with Altamonte Pediatric.  This clause states:

> "This Agreement shall be governed by and construed in accordance with the laws
> of the State of Florida, without giving effect to its principles of conflict of laws.
> Any dispute shall be litigated in the state or federal courts located in Hillsborough
> County, Florida, to whose exclusive jurisdiction the parties hereby consent."

22.     Venue is also proper based on the forum selection clauses in Greenway's

contracts with Altamonte Pediatric, referred to in the preceding paragraph.

### IV.     FACTS COMMON TO THE PROPOSED CLASS AND SUBCLASSES

#### A.     Certified EHRs must satisfy the requirements of the Meaningful Use program.

23.     On February 17, 2009, Congress enacted the HITECH Act to promote the

adoption and meaningful use of certified EHR technology.  Under the HITECH Act, the federal

Office of the National Coordinator for Health Information Technology ("ONC") established a

certification program for EHR technology.  As part of the certification program, EHR developers

(like Greenway) that seek to have software certified must provide documentation and evidence to

an ONC-authorized accredited testing laboratory (ONC-ATL) and certification body (ONC-

ACB) that the software meets the full scope of the certification requirements established by

ONC.  The ONC-ATLs and ONC-ACBs test and certify that developers' EHRs are compliant

with the certification requirements.

24.     Since 2011, the Center for Medicare and Medicaid Services ("CMS") has made

incentive payments to healthcare providers for demonstrating meaningful use of certified EHR

technology.  This program is commonly referred to as the "Meaningful Use" program.  Under

the program, individual practitioners ("Eligible Professionals") could qualify for up to a total of

$43,720 over five years from Medicare (ending after 2016) and up to $63,750 over six years

from Medicaid (ending after 2021).  To qualify for incentive payments, the program required

Eligible Professionals to, among other things: (1) use certified EHR technology and (2) satisfy

certain objectives and measures relating to their meaningful use of the certified EHR technology.

25.     Since 2016, the Meaningful Use program has also been incorporated into

Medicare's Merit-based Incentive Payment System, described in more detail below.

26.     The Department of Health and Human Services ("HHS") implemented the

Meaningful Use program's certification criteria and incentive payment requirements in multiple

stages.

a.     On January 13, 2010, HHS published rules setting forth the "2011

Edition" certification criteria and a proposed rule setting forth the "Stage 1" meaningful

use requirements for incentive payments.

b.     On September 4, 2012, HHS published rules setting forth the "2014

Edition" certification criteria and "Stage 2" meaningful use requirements for incentive

payments.

c.     On October 16, 2015, HHS published rules setting forth the "Modified

Stage 2" and "Stage 3" meaningful use requirements for incentive payments.

27.     To obtain certification, EHR developers (including Greenway) must represent to

an ONC-ACB that their EHR product satisfies the full scope of the certification criteria for

which they have applied and submit to and pass certification testing by an ONC-ATL.

28.     During testing, the ONC-ATL relies on representations from the developer regarding the capabilities of its software and uses only the ONC-approved test methods that relate to the regulatory criteria for which the developer has requested testing and certification. The ONC-ACB likewise relies on representations from the developer regarding the capabilities of its software and bases certification decisions on those representations and the testing performed by the ONC-ATL.

29.     After obtaining certification, an EHR developer must maintain certification by complying with all applicable conditions and requirements of the certification program.  Among other things, the EHR product must be able to accurately, reliably, and safely perform its certified capabilities in the field.  EHR developers must cooperate with the processes established by ONC for conducting ongoing surveillance and review of certified EHR technology.

30.     CMS payment rules concerning the Meaningful Use program recognize that healthcare providers rely on certification for assurance that an EHR product meets the applicable certification criteria, including that it possesses the certified capabilities that healthcare providers will need to use to achieve relevant objectives and measures, and that the software will perform in accordance with applicable certified capabilities.  CMS's website confirms that providers should rely on certification as evidence that a product contains the required features, stating:

> "CEHRT [(short for 'Certified EHR Technology')] gives assurance to purchasers and other users that an EHR system or module offers the necessary technological capability, functionality, and security to help them meet the meaningful use criteria. Certification also helps health care providers and patients be confident that the electronic health IT products and systems they use are secure, can maintain data confidentially, and can work with other systems to share information."[2]

---

[2] *See* CMS, "Certified EHR Technology," *available at* https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms/Certification.

31.     In 2018, HHS and CMS announced that the Meaningful Use program had been renamed the "Promoting Interoperability Program."  This Amended Complaint uses the names interchangeably.

**B.      For 2018 and 2019, many providers were eligible to receive $8,500 in annual incentive payments for using certified EHRs.**

32.     State Medicaid programs generally establish eligibility rules that enable providers to apply for incentive payments offered under the Meaningful Use program through Medicaid.  Typically, the eligibility rules require a certain volume of patients to be attributed to Medicaid.  Medicaid eligible providers are eligible to seek incentive payments based on the meaningful use of a certified EHR for a total of six years between 2011 and 2021.  Successful attestation results in Medicaid paying $8,500 per attesting provider per year.

**C.      For 2018 and 2019, the meaningful use of a certified EHR was an important component of Medicare's Merit-based Incentive Payment System.**

33.     Since 2017, Medicare has made the meaningful use of a certified EHR part of the Merit-based Incentive Payment System ("MIPS").

34.     Providers use MIPS if they are an eligible clinician type and meet the low volume threshold, which is based on allowed charges for covered professional services under the Medicare Physician Fee Schedule (PFS) and the number of Medicare Part B patients who are furnished covered professional services under the Medicare Physician Fee Schedule.

35.     Although MIPS still requires participating providers to report on the same objectives and measures relating to their meaningful use of certified EHR technology as Medicaid, MIPS's economic incentives (and disincentives) are not tied solely to the use of certified EHR technology.  Instead, Meaningful Use attestations comprise 25% of an overall MIPS score.  The final composite score is used to determine whether future Medicare payments

to the provider will be negatively or positively adjusted.  MIPS scores are assigned to individual physicians and practice groups, and are publicly available through Medicare's Physician Compare database.  Because of these features, MIPS scores can have a negative financial impact on future reimbursements and negative reputational effects.

> **D.**     **Greenway certified that Intergy is Meaningful Use compliant.**

36.     As part of the application process for obtaining certifications for Intergy under the Stage 1, Stage 2 and Stage 3 requirements for the Meaningful Use program, Greenway expressly represented to its ONC-ATL and ONC-ACB that Intergy satisfied the certification criteria for a compliant EHR and was capable of meeting those criteria and using the required standards in the field.  Although these certifications are not publicly available, Greenway should have custody of its certifications to its ONC-ATL and ONC-ACB.  Altamonte Pediatric cannot determine the precise dates, locations, or speakers of Greenway's nonpublic certifications without discovery, but the certification process would have required Greenway to make these certifications.

> **E.**     **Greenway represented to customers that Intergy is Meaningful Use compliant.**

37.     Greenway has marketed Intergy as a certified EHR since at least as early as 2010.

38.     On October 25, 2010, Greenway (then operating under the name "Sage") issued a press release stating:

> "Sage Intergy Meaningful Use Edition v 6.2, has been tested and certified under Drummond Group's Electronic Health Records ONC-ATCB program. Drummond Group Inc. is an ONC Authorized Testing and Certification Body (ONC-ATCB) that provides meaningful use certification for EHR systems and applications. When a complete EHR system or EHR module(s) is certified by Drummond Group, the eligible providers and hospitals can use this certified EHR technology as part of their criteria for qualifying for Center for Medicare and Medicaid Services (CMS) incentive payments. . . . Sage also will continue to maintain its existing comprehensive ambulatory EHR certification. Having two vendors testing our products provides a greater degree of confidence that our software meets the requirements of our customers, and we believe it provides

greater credibility in the market . . . Sage Intergy Meaningful Use Edition v 6.2 is 2011/2012 compliant and has been certified by an ONC-ATCB in accordance with the applicable certification criteria adopted by the Secretary of Health and Human Services."

39.     In 2011, Greenway (then operating under the name "Vitera Healthcare Solutions") published a brochure titled "Vitera Intergy Meaningful Use Edition: A Comprehensive Solution to Improve Clinical and Financial Outcomes While Achieving Meaningful Use."  The brochure states:

> "Achieving meaningful use is about more than just federal financial incentives. It's about transforming your practice in a way that lets you more efficiently manage the clinical outcomes you demand for your patients. . . . Vitera Intergy Meaningful Use Edition is ONC-certified and designed to help you achieve meaningful use without impacting your productivity and workflow.  Focus on providing efficient, quality care as you qualify for EHR incentives. . . . Vitera guarantees that the Vitera Meaningful Use Edition will meet the certification criteria for meaningful use set by the ONC. Vitera will modify that offering as necessary to maintain compliance. If a solution within the Meaningful Use Edition fails to meet the ONC certification criteria, Vitera will provide its customers with a 12-month software support credit."

40.     On September 19, 2013, Greenway issued a press release:

> "Vitera Intergy EHR has been tested and certified as a complete EHR under the Drummond Group's Electronic Health Records Office of the National Coordinator Authorized Certification Body (ONC-ACB) program. The certification indicates that Vitera Intergy EHR, as one of a very small number of ONC 2014 Edition-approved solutions, is compliant in accordance with the criteria adopted by the Secretary of the U.S. Department of Health and Human Services. Vitera continues to gain industry-wide recognition for leading the way in providing innovative solutions and services that help physician practices thrive and take advantage of regulatory changes ahead – including Meaningful Use incentives. . . . Vitera Entergy [sic] Meaningful Use Edition consists of Vitera Intergy EHR, Vitera Intergy Practice Portal, and Meaningful Use Dashboards (available with Vitera Practice Analytics or Vitera Practice Analytics Quality Measures Edition). This Complete EHR certification is 2014 Edition compliant and has been certified by an ONC-ACB in accordance with the applicable certification criteria adopted by the Secretary of the U.S. Department of Health and Human Services."

41.     On November 8, 2017, Greenway issued a press release stating:

"Greenway Health, a leading health information technology and services provider, today announced a milestone: All three of its electronic health record and practice management solutions have achieved 2015 ONC Health IT certification. The certified editions of Prime Suite v18.00, Intergy v11.00 and SuccessEHS v9.0, certified in June, are now available to help customers succeed in value-based care programs such as the Merit-based Incentive Payment System (MIPS) and Alternative Payment Models. . . . These Health IT Modules are 2015 Edition compliant and have been certified by an ONC-ACB in accordance with the applicable certification criteria adopted by the Secretary of Health and Human Services."

42.     Greenway's website contains marketing material concerning Intergy at the following hyperlink: https://www.greenwayhealth.com/intergy. These materials tout Intergy's "Built-in regulatory readiness" and call Intergy "2015 ONC Health IT-certified."

43.     The examples in this subsection of Greenway's marketing materials are illustrative of numerous other statements by Greenway that Intergy was compliant with the requirements of the Meaningful Use program.

**F.     Greenway represented to Altamonte Pediatric that Intergy is Meaningful Use compliant.**

44.     Aside from the marketing materials described in the prior section, Greenway made specific representations to Altamonte Pediatric that Intergy was ONC-ATCB certified as a complete EHR that complied with the Meaningful Use program.

45.     Even before the parties executed the September 30, 2013 agreement in connection with Intergy (as fully discussed below in Section IV.G.), Greenway made representations to Altamonte Pediatric that Intergy was Meaningful Use compliant.

46.     On April 30, 2012, Greenway (then operating under the name "Vitera") sent a mass-distribution newsletter to Phyllis Zissman at Altamonte Pediatric stating that "Intergy v8.00 will deliver hundreds of the product enhancements to existing clinical, financial, administrative and reporting features, as well as exciting new features - all designed to improve the user

12

experience, facilitate your participation in *government incentive programs*, and help you become more efficient as you deliver quality care for your patients." (emphasis added). Because the phrase "government incentive programs" clearly included the Meaningful Use program, Greenway's April 30, 2012 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address: communications@viterahealthcare.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

47.     On January 15, 2013 at 7:52 am, Greenway (then operating under the name "Vitera") sent a mass-distribution newsletter to Phyllis Zissman at Altamonte Pediatric stating: "Why You Should Be On the Latest Version[.] Vitera is continuously updating our products to ensure practices are able to provide the highest level of quality care while complying with the latest in government rules and regulations. With initiatives like ICD-10 and Meaningful Use Stage II, as well as required annual reporting, Vitera is working hard to upgrade all of our solutions to provide you with the tools needed to stay ahead of any regulations being rolled out." Greenway's January 15, 2013 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address: communications@viterahealthcare.com. Accordingly only Greenway

knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

48.     On July 24, 2013 at 10:22 am, Greenway (then operating under the name "Vitera") sent a mass-distribution newsletter to Phyllis Zissman at Altamonte Pediatric stating "Congratulations to Illini Medical Associates (IMA) of Jerseyville, Ill., for successfully using Vitera Intergy to receive $425,000 in Year 1 Meaningful Use attestation incentives, reduce transcription fees by 96%, eliminate overtime pay and free up some much needed storage space." Greenway's July 24, 2013 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address: communications@viterahealthcare.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

49.     On August 26, 2013 at 4:19 am, Greenway (then operating under the name "Vitera") sent a mass-distribution newsletter to Phyllis Zissman at Altamonte Pediatric stating "Congratulations to HeathLinc Community Health Centers of Northwest Indiana for successfully using Vitera Intergy CHC to increase claims acceptance rates to nearly 98% and for attesting for Meaningful Use Stage 1." Greenway's August 26, 2013 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address: communications@viterahealthcare.com. Accordingly

14

only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

50.     The same August 26, 2013 communication from Greenway stated in the preceding paragraph: "Take the Fast Track to Meaningful Use Success - Stage 2. The critical path to Meaningful Use 2 is really a toll road: The price? Knowing when you should take the right actions at the right time. That's why we invite you to register for our upcoming webinar, '7 Practical Steps to Meaningful Use Stage 2,' the second in our series of regulatory readiness webinars. 'With new and increased reporting in 2014, there's a real risk thinking you're doing what you need to, then discovering you can't satisfy MU2 requirements,' said webinar presenter Stephen McCallister, CPHIT, CPEHR, a recognized healthcare IT and EHR expert and a consultant with MGMA's Healthcare Consulting Group. The one-hour webinar will provide all the information you need to avoid loss of incentive payments, capture the data and measurements required to meet deadlines and understand the roles your software - and software vendor - play." Greenway's August 26, 2013 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address: communications@viterahealthcare.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

51.     On August 27, 2013 at 6:08 am, Phyllis Zissman at Altamonte Pediatric registered for the webinar titled "7 Practical Steps to Meaningful Use Stage 2," described in the preceding paragraph.

52.     On or around September 2013, Greenway and Altamonte Pediatric discussed entering into a contract for Intergy. The parties discussed Meaningful Use compliance during this time. Correspondence between Greenway and Altamonte Pediatric confirm these discussions took place. For example, on September 3, 2013 at 6:27 am, Joanna Bupp, Senior Sales Account Executive at Vitera, sent an email to Phyllis Zissman stating that "I believe the last time I have provided you a preliminary quote on this I don't believe I had the practice portal on there, which will be a required part for Meaningful Use." Greenway's September 3, 2013 representation conveyed the overall impression to Altamonte Pediatric and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements.

53.     On September 28, 2013 at 7:52 am, Joanna Bupp, Senior Sales Account Executive at Vitera, sent an email to Phyllis Zissman at Altamonte Pediatric forwarding a session agenda for Vibe - a workshop hosted by Greenway (then operating under the name "Vitera")- stating as follows:

    a.     "Attesting for Meaningful Use Stage 1 with Vitera Intergy: This hands-on workshop will include a detailed step-by-step walk through on how to achieve Meaningful Use Stage 1 using the Vitera Intergy suite. Review Meaningful Use measures, the workflows within Vitera Intergy to satisfy these measures, and the capabilities around reporting and attesting."

    b.     "Attesting for Meaningful Use Stage 2 with Vitera Intergy: This hands-on workshop will include a detailed step-by-step walk through on how to achieve

16

Meaningful Use Stage 2 using the Vitera Intergy suite. Review Meaningful Use measures, the workflows within Vitera Intergy to satisfy these measures, and the capabilities around reporting and attesting."

c.      "Clinical Interoperability: As part of Meaningful Use, providers will have to send "Direct" messages that enable secure correspondence with other providers in their directory. Hear about this and other interoperability standards, organizations and innovations during this interactive session."

d.      "Vitera Intergy EHR 9.0: Meaningful Use II Deep Dive Find out all the changes in Intergy EHR 9.0 related to Meaningful Use II. Learn best practices and tips direct from our development and product management teams."

e.      "Medical Manager EHR & Vitera Clinical Exchange: Hear about Vitera's new integrated EHR and Analytics solution as an option for Medical Manager customers looking to pursue Meaningful Use dollars. Also includes an introduction to Vitera's newest product - Vitera Clinical Exchange."

f.      "How I Attested for Meaningful Use Case Study/Meaningful Use II Overview: Detailed case study conducted by Vitera Stat customers on how they attested for Meaningful Use. Also included is an overview and review of how to attest for Meaningful Use Stage II."

g.      Greenway's September 28, 2013 representations described in subparagraphs (a) – (f) above conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements.

54.     After the parties entered into the agreement on September 30, 2013, Greenway continued to maintain that Intergy is a certified EHR and Meaningful Use complaint.

55.     On September 30, 2013 at 8:13 am, Joanna Bupp, Senior Sales Executive at Vitera, sent an email to Phyllis Zissman at Altamonte Pediatric providing a weblink that showed the certification for Intergy. She also provided a certification ID for use with CMS in connection with government reporting. She also provided a document that describes Intergy as the "Vitera Intergy Meaningful Use Edition" and a "Complete EHR." Greenway's September 30, 2013 representation conveyed the overall impression to Altamonte Pediatric and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Upon information and belief, Greenway made similar statements to other Intergy customers.

56.     After Altamonte signed its contract with Greenway, Greenway made further representations to Altamonte Pediatric regarding Intergy's compliance with the Meaningful Use program by sending widely distributed training manuals, newsletters, and release notes.

57.     On November 1, 2013 at 12:23 pm, Greenway (then operating under the name "Vitera") sent a mass-distribution newsletter to Phyllis Zissman at Altamonte Pediatric stating "Congratulations to Old Hook Medical Associates of Emerson, New Jersey, for successfully using Vitera Intergy to attest for $180,000 in Meaningful Use incentives, boosting claims collection rates to nearly 100% and cutting AR days in half." Greenway's November 1, 2013 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address:

18

communications@viterahealthcare.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

58.     On December 9, 2013 at 12:13 pm, Greenway (then operating under the name "Vitera") sent a mass-distribution newsletter to Phyllis Zissman at Altamonte Pediatric stating that "More than 12,000 customers used our solutions to attest for Meaningful Use, earning more than $280 million in incentives." Greenway's December 9, 2013 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address: communications@viterahealthcare.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

59.     On February 19, 2014 at 7:39 am, Nicholas Literello, Project Manager for Greenway, sent an email to Phyllis Zissman at Altamonte Pediatric forwarding a Training Plan for Intergy which expressly provides for "Meaningful Use Training" that "prepares your practice by covering the following topics Overview of the Intergy Meaningful Use Edition, Description of each of the core measures, Description of each of the menu measures and a link to more in-depth training, Overview of the clinical quality measures." Greenway's February 19, 2014 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting

requirements. Upon information and belief, Greenway used similar training documents with other customers.

60.     On June 19, 2014 at 2:35 pm, Kaitlin Garrett, a Customer Experience Manager at Greenway, sent an email to Phyliss Zissman at Altamonte forwarding an Intergy Update Release Notes for version 9.00 stating that "Meaningful Use templates are now shipped with the Intergy system" and the "Guide to Meaningful Use Stage 2 and Release Notes for Secure Messaging and Patient Portal documents are now available in two online libraries." Greenway's June 19, 2014 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Upon information and belief, these release notes were broadly forwarded to other Greenway customers.

61.     On July 2, 2014 at 6:06 pm, Leann Becker, Implementation Project Manager of Greenway, sent an email to Phyllis Zissman of Altamonte Pediatric forwarding a Learner's Guide for the Intergy Practice Portal stating that the "Intergy Practice Portal gives practices the capability to attest for meaningful use measures." Greenway's July 2, 2014 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Upon information and belief, this guide was broadly distributed to other Greenway customers.

62.     On August 6, 2014 at 6:48 pm, Cheryl Friel, Implementation Consultant at Greenway, sent an email to Phyllis Zissman forwarding a User's Guide for Intergy version 8.10. Upon information and belief, this guide was broadly distributed to other Greenway customers. The guide states:

a.      "the Quality Measures dashboards are used to demonstrate that your practice is meeting the government's Meaningful Use criteria"

b.      "the Operational Quality Measures dashboard are derived from the nationally published Final Rule specifications for meaningful use to ensure EHR systems are being used in a meaningful way."

c.      "the Clinical Quality Measures dashboard are derived from the nationally published Final Rule specifications for meaningful use to ensure EHR systems are being used in a meaningful way."

d.      "The Submission tab on the Clinical Quality Measures dashboard allows you to report evidence of how well your practice has been meeting meaningful use criteria for clinical quality measures."

e.      "Exporting data to an attestation file is a two phase process. During the first phase, data is examined for its meaningful use criteria."

f.      "Being able to generate a list of patients by care condition is a meaningful use requirement."

g.      "Dashboards provide an interactive and comprehensive view of how well the practice is meeting Meaningful Use criteria."

h.      Greenway's August 6, 2014 representations described in paragraphs (a) through (g) conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements.

63.      On August 13, 2014 at 11:05 am, Greenway sent a mass-distribution newsletter to Phyliss Zissman at Altamonte Pediatric which provided a link on "With 64 CQMs to choose

from, how do you select the right measures for your practice? In Greenway's most recent industry blog, you'll learn how to choose the parameters that best represent the care your practice provides. To find out more, including which CQMs your primary care peers have selected, check out the blog and download CQMs: Clinical Quality Measures 101, Greenway's guide to CMS quality-reporting requirements." Greenway's August 13, 2014 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address: communications@viterahealthcare.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

64. On September 4, 2014 at 8:41 am, Nicholas Litterello, Project Manager at Greenway, sent an email to Phyllis Zissman forwarding Updated Released Notes for Intergy version 9.00 stating that "Visit Note Meaningful Use templates are now shipped with the Intergy system in C:\Intergy\Code\Shared\Support\VisitNoteTemplates\Meaningful Use" and "[t]he Guide to Meaningful Use Stage 2 and Release Notes for Secure Messaging and Patient Portal documents are now available in two online libraries." Greenway's September 4, 2014 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Upon information and belief, these release notes were broadly forwarded to other Greenway customers.

65.     On September 18, 2014 at 12:31 pm, Shirley Geisler, Principal Customer Support Technician of Greenway, sent an email to Becky James and Phyllis Zissman at Altamonte Pediatric forwarding the widely distributed Updated Release Notes for Intergy version 9.00 stating that the new exchange of document practice for smoking status "allows practices to have Smoking Status history counted for Meaningful Use without having to enable all Social History [and] [t]his allows pediatric practices to qualify for Meaningful Use via the Practice Portal without having to enable Social History." Greenway's September 18, 2014 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Upon information and belief, these release notes were broadly forwarded to other Greenway customers.

66.     On December 12, 2014, Mark Janiszewski – the Executive Vice President of Product Management at Greenway – signed and sent a letter to several of Altamonte Pediatric's providers (including, but not limited to, Dr. Soven, Dr. Harris, Dr. Belton, Dr. Candelori, Dr. Good, Dr. Zissman, Nurse Krivan, Nurse Donahue, Nurse Mullen, Nurse Powell, and Nurse Goddard) stating that: "Intergy EHR v9.00 was uploaded to your server on 12/6/2013 until present. Your organization has serialized all the components of the Greenway Intergy Meaningful Use Edition,* and 2014 Edition Complete EHR. This important industry certification provides Greenway Health customers with the confidence of knowing that the software products they use have been tested against the most rigorous industry standards for functionality, security and interoperability, and allow them to successfully participate in the Centers for Medicare and Medicaid EHR Incentive Program."  Upon information and belief, this was a standard form letter that Greenway broadly sent to hundreds of customers attesting to Meaningful Use.

67.    The letter described in the preceding paragraph further provides that the EHR is "compliant and has been certified by an ONC-ATCB in accordance with the applicable certification criteria adopted by the Secretary of Health and Human Services." This sentence describe not only certification of Intergy, but actual compliance with the requirements of the Meaningful Use program.

68.    It is routine practice for Greenway to send these Meaningful Use certification letters to Altamonte Pediatric's providers. Such letters were all signed by Mark Janiszewski and sent to Altamonte Pediatric's providers on March 4, 2016 (Dr. Soven, Dr. Harris, Dr. Belton, Dr. Candelori, Dr. Good, Dr. Obmana-Nguyen, Nurse Krivan, Nurse Donahue, Nurse Mullen, Nurse Powell, Nurse Goddard, Nurse Loft, and Nurse Vuillier) and on January 11, 2018 (Nurse Goddard, Nurse Vuillier and other providers). The representations as to Intergy's compliance with the Meaningful Use program in each of these letters is substantially the same. Representative examples of the letters are attached hereto as Composite Exhibit 1.

69.    On June 4, 2015 at 7:19 am, Greenway sent a mass-distribution newsletter to Becky James at Altamonte Pediatric for a sponsored webinar stating "Meaningful Use Stage 2, Part 1: Workflows in Intergy. . . . Attesting for meaningful use (MU) Stage 2 in 2015? Join us to learn how your practice can achieve MU Stage 2 using Intergy EHR" and topics include "Meaningful use Stage 2 measures, New core and menu objectives, Helpful features in Intergy, Intergy workflows for collecting meaningful use Stage 2 data." Greenway's June 4, 2015 representations conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address:

communications@greenwayhealth.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

70.     On June 28, 2015 at 7:22 am, Greenway sent a mass-distribution newsletter to Becky James at Altamonte Pediatric for a sponsored webinar stating "Meaningful Use Stage 2, Part 1: Workflows in Intergy. . . . Attesting for meaningful use (MU) Stage 2 in 2015? Join us to learn how your practice can achieve MU Stage 2 using Intergy EHR" and "Topics include: Meaningful use Stage 2 measures, New core and menu objectives, Helpful features in Intergy, Intergy workflows for collecting meaningful use Stage 2 data." Greenway's June 28, 2015 representations conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address: communications@greenwayhealth.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

71.     On July 1, 2015 at 7:39 am, Greenway sent a mass-distribution newsletter to Becky James at Altamonte Pediatric for a sponsored webinar stating "Attesting for meaningful use Stage 2 with Intergy, part 2: Join us to learn how to complete the meaningful use attestation process using Intergy and Intergy Practice Analytics. We will take you through the processes within your solution and the CMS attestation website" and "If you plan to attest for MU with Intergy, register for the webinar today." Greenway's July 1, 2015 representations conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use

compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address:  communications@greenwayhealth.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

72.      On July 8, 2015 at 6:03 am, Greenway sent a mass-distribution newsletter to Becky James at Altamonte Pediatric for a sponsored webinar stating "Attesting for meaningful use Stage 2 with Intergy, part 2: Join us to learn how to complete the meaningful use attestation process using Intergy and Intergy Practice Analytics. We will take you through the processes within your solution and the CMS attestation website" and "If you plan to attest for MU with Intergy, register for the webinar today." Greenway's July 8, 2015 representations conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address:  communications@greenwayhealth.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

73.      On January 18, 2016 at 9:13 am, John Robinson, Senior Customer Support Technician of Greenway, sent an email to Becky James at Altamonte Pediatric forwarding a widely distributed Learner's Guide manual for the Intergy Practice Portal stating that "Intergy Practice Portal gives practices the capability to attest for meaningful use measures" and sets forth

the Meaningful Use requirements and how the Intergy Practice Portal assists in compliance. Greenway's January 18, 2016 representations conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Upon information and believe this manual was widely distributed to Greenway's customers.

74.     On May 5, 2016 at 12:45 pm, Greenway sent a mass-distribution newsletter to Becky James at Altamonte Pediatric stating that Intergy's "design makes it easier for you to meet meaningful use" and "When patients log in to Greenway Patient, they automatically view their healthcare record, helping you meet meaningful use (MU) Stage 3's ramped-up patient engagement objectives." Greenway's May 5, 2016 representations conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements. Altamonte Pediatric does not allege an individual Greenway employee responsible for this communication because the email was sent from an anonymous email address: communications@greenwayhealth.com. Accordingly only Greenway knows the employees internally responsible for this information. Upon information and belief, this communication was sent broadly to many other Greenway customers.

75.     On November 4, 2016 at 6:48 am, Jennifer Redding, Customer Experience Manger at Greenway, sent an email to Phyllis Zissman at Altamonte Pediatric stating that Intergy version 10.10 "Clinical Quality Measures (CQMs) have been updated to meet 2016 program requirements" and users can "[t]est out and start using EHR changes made in anticipation of certifying Intergy to the ONC 2015 CEHRT requirements, which must be put into use by Jan 1, 2018 under current MU Stage 3 and proposed MIPS program requirements." Greenway's

November 4, 2016 representations conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements.

76.     On December 15, 2016 at 1:08 pm, Jennifer Redding, Customer Experience Manager at Greenway, sent an email to Becky James at Altamonte Pediatric forwarding a widely distributed brochure which highlights Intergy version 10.10 new systems features. The brochure states that some of the updated features " allows MU compliant race codes to be displayed" and "allows you to comply with ONC 2015 Certification requirements for recording the gender identity for a patient." Greenway's December 15, 2016 representations regarding certification conveyed to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant, comports with the government's reporting requirements and is certified. Upon information and belief, this brochure was widely distributed to Greenway's customers.

77.     On May 26, 2017 at 8:00 am, Jennifer Keller, R&D, Release Management, Beta Project Lead of Greenway, sent an email to Phyllis Zissman of Altamonte Pediatric states that Intergy version 11.00 has "Updates for Medicaid/MU Stage 3" and an "Operational dashboard for Medicaid Stage 3." Greenway's May 26, 2017 representation conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements.

78.     On June 19, 2017, at 7:12 am, Julie Altman, Customer Experience Manager at Greenway, sent an email to Phyllis Zissman at Altamonte Pediatric stating that "I wanted to go ahead and get you this info for Intergy 11.0 which will be the 2015 certified version." The June 2017 email also forwarded widely distributed Release Notes for Intergy version 11.00 stating that the "Operational Quality dashboard now reports on measures from Stage 3 of the

Meaningful Use program." A brochure on Intergy version 11.00 was also forwarded via email and stating that "New installations of Intergy 11.00 are intended to include Practice Analytics Quality Measures Edition (QME) to support the meaningful use functions of the EHR product." Greenways June 19, 2017 representations conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant, comports with the government's reporting requirements and is certified. Upon information and belief, this brochure was widely distributed to Greenway's customers.

79.     On August 9, 2017 at 8:48 am, Jennifer Keller, R&D, Release Management, Beta Project Lead of Greenway, sent an email to Becky James and Phyllis Zissman of Altamonte Pediatric forwarding a mass-distribution brochure for the Intergy Practice Portal 8.0 providing updates for Meaningful Use Stage 3 and stating that the "Portal and Messaging Now Support MU3 Objectives 5, 6, and 7." The same August 9, 2017 email also forwarded the widely distributed Release Notes for Intergy version 11.00 stating that "Intergy Practice Analytics to count the clinical summary document request and give your site the correct Meaningful Use credit." Greenway's August 9, 2017 representations conveyed the overall impression to Altamonte and the reasonable consumer that Intergy is Meaningful Use compliant and comports with the government's reporting requirements.

**G.     Greenway's form contracts promised that Intergy would "remain compliant with federal regulations."**

80.     Upon information and belief, Greenway's standard practice is to use form contracts with its customers that are drafted entirely by Greenway.

81.     Altamonte Pediatric executed two standard form contracts with Greenway dated September 30, 2013, which Greenway drafted and prepared.  One set of contracts consists of a Master Agreement, Software License Attachment, EDI Products and Services Attachment,

Subscription Services Attachment, Non-Hardware Support Services Attachment, Hardware and Hardware Support Services Attachment, and Business Associate Agreement.  These contracts are attached hereto as Exhibit 2.  Another contract is an "Amendment to Master Agreement," and is attached hereto as Exhibit 3.  The Amendment states: "In the event of any inconsistency between this Amendment and the Agreement, the Terms and Conditions of this Amendment shall govern and control."  Ex. 3, at 1.

82.    Altamonte Pediatric's contract with Greenway states: "Guaranty. Vitera is committed to being a leader in the ambulatory HIT market. To that end, Vitera guarantees that during the Initial Subscription Services Term, Vitera will (1) continue to support the Subscription Services, including providing upgrades and updates if and when available, and (2) cause the Subscription Services to remain compliant with federal regulations (including those promulgated by the Centers for Medicare and Medicaid Services) establishing healthcare industry standards, in each case provided Customer upgrades to new versions of the Subscription Services in a timely fashion."  Ex. 3 at 1.  This promise required Greenway to ensure that Intergy remained compliant with the requirements of the Meaningful Use program.

**H.    Greenway's contracts incorporate by reference documentation expressly stating that Intergy satisfied the requirements of the Meaningful Use program.**

83.    Altamonte Pediatric's Software License Agreement with Greenway contains a warranty stating in sum or substance:

> "Vitera warrants that, for the Software Warranty Period, the Vitera Software, as updated and used in accordance with the Documentation and in the COE, will operate in all material respects in conformity with the functional specifications described in the Documentation."

Ex. 2, Software License Agreement, at § 4.1.  Altamonte Pediatric's Subscription Services Agreement with Greenway similarly states: "Vitera warrants that, for the Subscription Services

Warranty Period, the hosted Vitera Software will operate in all material respects in conformity with the functional specifications described in the Documentation." Ex. 2, Subscription Services Agreement, at § 4.1.  Upon information and belief, Greenway made this promise to hundreds or thousands of other Intergy customers.  Greenway used the same language in hundreds of contracts for Prime Suite, another Greenway EHR product.  *See Pulmonary Associates of Charleston v. Greenway Health, LLC*, No. 19-cv-167-TCB, Dkt. No. 15, First Amended Class Action Complaint, ¶¶ 73 – 74 (N.D. Ga. Jan. 14, 2020).

84.     Documentation is defined by Altamonte Pediatric's contract with Greenway to mean: "the user instructions, release notes, manuals and on-line help files in the form generally made available by Vitera, regarding the use of applicable Software or Services, as updated by Vitera from time to time." Ex. 2, Master Agreement, at 7.

85.     Greenway's Documentation for the current version of Intergy, which is incorporated into Greenway's form contracts as described in the preceding paragraphs, repeatedly assured Greenway's customers that Intergy met the Meaningful Use program's certification requirements and would enable users to attest to meaningful use of certified EHR technology and take advantage of incentive programs.  For example:

a.     A Greenway webinar presentation concerning version 11 of Intergy states: "Intergy v.11.0 will become Intergy's 2015 ONC CEHRT [(short for Certified EHR Technology)].  In this release, we've tested and finalized all customer functionality, and added even more based on our clients' input."  The document also stated: "Quality Measures & aligned UDS measures complete – 64 CQMS and 11 UDS measures updated for 2017."  This sentence is referring to compliance with Meaningful Use regulations concerning clinical quality measures, discussed in more detail in § IV.H.3 below.  This

presentation is available on a Greenway webpage at:

https://greenwayhealth.com/sites/default/files/files/2018-03/Intergy-v11-Webinar-Whats-New-.pdf.  Upon information and belief, this presentation was published in or around March 2018.  This webinar is a form of documentation under Greenway's contracts for Intergy.

　　　　b.　　Greenway publishes documentation on its website assuring that all versions of Intergy were compliant with the Meaningful Use regulations.  The documentation can be accessed at: https://www.greenwayhealth.com/about/awards-and-certifications.  A PDF that can be downloaded by browsing this webpage and selecting a hyperlink for Intergy's certification is attached hereto as Exhibit 4.  The document states regarding Intergy version 11:

> "Greenway Intergy Meaningful Use Edition v11 was certified on 11/01/2017 as a 2015 Edition compliant, Complete EHR and has been certified by an ONC-ACB in accordance with the applicable certification criteria adopted by the Secretary of the U.S. Department of Health and Human Services. This certification does not represent an endorsement by the U.S. Department of Health and Human Services. Modules tested include: 170.315 (a)(1-15); (b)(1-9); (c)(1-4); (d)(1-9, 11); (e)(1-3); (f)(1); (g)(2-9); (h)(1). Clinical Quality Measures tested include: 2v6; 22v5; 50v5; 52v5; 56v5; 61v6; 62v5; 64v6; 65v6; 66v5; 68v6; 69v5; 74v6; 75v5; 77v5; 82v4; 90v6; 117v5; 122v5; 123v5; 124v5; 125v5; 126v5; 127v5; 128v5; 129v6; 130v5; 131v5; 132v5; 133v5; 134v5; 135v5; 136v6; 137v5; 138v5; 139v5; 140v5; 141v6; 142v5; 143v5; 144v5; 145v5; 146v5; 147v6; 148v5; 149v5; 153v5; 154v5; 155v5; 156v5; 157v5; 158v5; 159v5; 160v5; 161v5; 163v5; 164v5; 165v5; 166v6; 167v5; 169v5; 177v5; 179v5; 182v6."

Exhibit 4 contains similar statements for other versions of Intergy.  This statement indicates that Intergy had all the required features of a certified EHR, including requirements relating to 64 required clinical quality measures.

c.      Greenway made further documentation titled "Meaningful Use 2014 Stage 2 Attestation Customer Toolkit" publicly available.  This documentation states: "Vitera Intergy Meaningful Use Edition version 8.10 is 2011 ONC-ATCB certified by The Drummond Group and version 9.0 will be 2014 ONC-ATCB certified."  It also states:

> "Clinical Quality Measure (CQM) reporting was removed from the list of core objectives in 2014, but EPs [(short for eligible providers)] are still required to report on them in order to demonstrate meaningful use.  EPs must select at least nine CQMs to report, which must cover at least three of the six health care policy domains recommended by the Department of Health and Human Services' National Quality Strategy. . . . EPs beyond their first year of Meaningful Use participation will be able to submit CQMs electronically (directly from Intergy) beginning with CY/FY 2014 provided that CMS develops its electronic attestation module as planned.  In the meantime, Intergy is a certified EHR direct product that enables electronic PQRS reporting, which CMS is currently able to receive."

This is another reference to clinical quality measures described in § IV.H.3 below.

This publication can be downloaded from a Greenway hyperlink at:

http://vscframe.viterahealthcare.com/Meaningful_Use_2014_Stage_2_Attestation _Customer_Toolkit_130606.pdf?v=1.  Upon information and belief this publication was authored and disseminated in 2013 or 2014.

86.     The examples in this subsection of Greenway's documentation are illustrative of numerous other statements by Greenway that Intergy was compliant with the requirements of the Meaningful Use program.

I.      **Contrary to Greenway's statements and promises, Intergy did not satisfy the requirements of the Meaningful Use program for many years.**

87.     Contrary to Greenway's certifications to ONC-ACBs and ONC-ATLs, its statements directed at Altamonte Pediatric and others similarly situated, its contractual promises to Altamonte Pediatric and others similarly situated, Intergy did not satisfy the requirements of the Meaningful Use program for many years and does not satisfy those requirements today.  The

below examples are illustrative of the many deficiencies of Greenway's software.  Upon

information and belief, discovery will identify additional deficiencies.

> **1.    Greenway audited Intergy's Meaningful Use Compliance in response to the Government's False Claims Act investigation.**

88.    In early 2017, the United States Department of Justice opened an investigation

into Greenway.  The investigation concerned the compliance of Greenway's Prime Suite EHR

with the requirements of the Meaningful Use program and the truthfulness of Greenway's

statements regarding that EHR's compliance.  Upon information and belief, Greenway became

aware of this investigation shortly after it was opened, likely as a result of the service of formal

subpoenas or civil investigative demands.

89.    Sometime in the second half of 2018—over a year after the Department of Justice

opened an investigation into Greenway—Greenway launched an audit to test whether its EHR

products complied with the requirements of the Meaningful Use program.  Upon information and

belief, the Government's investigation caused Greenway to launch this audit.

90.    This belated audit—which Greenway should have conducted before representing

that its software complied with the requirements of the Meaningful Use program—led to

Greenway disclosing pervasive, critical errors in Intergy and Prime Suite and to Greenway

completely ceasing support for and winding down its third EHR product, SuccessEHS

(presumably because the software was so flawed that repairing it was not in Greenway's

interest). Greenway encouraged its SuccessEHS customers to switch to Intergy, despite the flaws

in Intergy (described below).

91.    The pervasive errors in Prime Suite are the subject of another class action lawsuit

that is now pending the Northern District of Georgia.  *See Pulmonary Associates of Charleston v.*

*Greenway Health, LLC*, No. 19-cv-167-TCB, Dkt. No. 15, First Amended Class Action

Complaint (N.D. Ga. Jan. 14, 2020).

92.     On February 6, 2019, Greenway informed its customers that it had agreed to pay

$57 million to resolve claims by the United States Department of Justice regarding Prime Suite.

The Department of Justice filed a complaint that day, alleging that Greenway had violated the

False Claims Act and that Prime Suite had not complied with the requirements of the Meaningful

Use program since at least between January 1, 2014 and December 31, 2017.

93.     Although the Department of Justice's complaint only concerned Prime Suite,

Greenway's contemporaneous admissions that Intergy also failed to comply with the Meaningful

Use program (described in more detail in Sections IV.H.2 and IV.H.3 below) and its sudden

decision to wind down SuccessEHS due to its compliance problems strongly indicate that

Greenway had previously failed to take basic steps to ensure that any of its products were

compliant.

### 2.     Greenway admitted that Intergy failed to satisfy at least two measures relating to the patient portal for all of 2017 and most of 2018.

94.     Under the Meaningful Use program, EHRs must enable "patients . . . to use

internet-based technology to view, download, and transmit their health information to a 3rd

party."  45 C.F.R. § 170.315(e).  Eligible providers were required to demonstrate that at least five

percent of their unique patients used this feature during the reporting period.[3]

95.     EHRs also must identify patient-specific education resources based on a patient's

problem list and medication list in accordance with Government standards.  45 C.F.R. §

---

[3] CMS, *2017 Modified Stage 2 Program Requirements for Providers Attesting to their State's Medicaid EHR Incentive Program*, *available at* https://www.cms.gov/regulations-and-guidance/legislation/ehrincentiveprograms/stage2medicaidmodified_require.html.

170.315(a)(13).  Eligible providers were required to demonstrate that at least ten percent of their unique patients were provided with such education resources.[4]

96.      Both these measures relate to interactions with patients through an interface called the patient portal.

97.      On September 10, 2018, Greenway alerted its customers that its software contained errors, stating:

> "We have identified an issue that we want to bring to your immediate attention. The issue relates to the calculation of two measures within Intergy that may have led to reporting a higher result than achieved. These measures include View, Download, Transmit (VDT) and Patient-Specific Education for both the Merit-Based Incentive Payment System (MIPS) and Medicaid Meaningful Use in 2017. . . . If this measure logic affected your attestation, a failure to disclose may result in government overpayment and associated fines and penalties. Accordingly, you must proactively disclose the potential error in your numerator data for these measures. This will allow adjustments to be made prior to the payment period. To disclose, contact the relevant agency as outlined below."

Greenway assured that fixes for 2018 reporting would be deployed on September 12, 2018 and October 10, 2018.

98.      Contemporaneously, Greenway disclosed that Prime Suite suffered from the same flaws.  *See Pulmonary Associates of Charleston v. Greenway Health, LLC*, No. 19-cv-167-TCB, Dkt. No. 15, First Amended Class Action Complaint, ¶ 96 (N.D. Ga. Jan. 14, 2020).

99.      On October 2, 2018, Greenway disclosed new problems with these measures, stating: "As part of our testing, we discovered a new issue related to VDT that delayed the availability of the updated measure logic."  Greenway pushed back the estimated delivery date for the fixes to late October 2018.

---

[4] CMS, *Eligible Professional Medicaid EHR Incentive Program Modified Stage 2: Objectives and Measures for 2017 Objective 6 of 10, available at* https://www.cms.gov/Regulations-and-Guidance/Legislation/EHRIncentivePrograms/Downloads/MedicaidEPStage2_Obj6.pdf.

100.     Altamonte Pediatric is unable to identify the precise start date of the errors with statistics regarding the patient portal.  Only Greenway has the detailed information regarding Intergy's source code and development to state precisely which version of Intergy introduced the errors and when.

### 3.     Greenway also admitted that Intergy could not reliably calculate dozens of Clinical Quality Measures for all of 2018 and 2019.

101.     Under the Meaningful Use program, electronic clinical quality measures (CQMs) are tools that help measure and track the quality of health care services that EPs, eligible hospitals, and CAHs provide, as generated by a provider's EHR.  EHRs "must be able to record all of the data that would be necessary to calculate each CQM."  45 C.F.R. § 170.314(c)(1).  The Meaningful Use program has required EHRs to calculate CQMs since the Stage 1 criteria became effective.

102.     Individual providers must report on at least six CQMs a year, and select which metrics to report on from a list of options, depending on which metrics are most sensible.  For example, a pediatric doctor might report on metrics related to children, whereas a gynecologist may choose metrics relating to cancer screening.  There are 64 different CQMs.  In addition to being required for Meaningful Use attestation, CQMs must be submitted for the Quality scoring component of the MIPS program for Medicare (which accounts for 50% of the composite MIPS score).

103.     On December 6, 2018, Greenway informed its customers:

 "Earlier this year we reached out regarding a measure calculation error for two
Promoting Interoperability measures in the Intergy analytics tools and dashboards.
Consistent with Greenway Health's focus on quality and compliance, we
subsequently conducted a comprehensive internal audit of Intergy and its certified
functionality, including the logic used to calculate the percentages for all
Promoting Interoperability measures.  Through our recent audit, we discovered
that several Promoting Interoperability measures are calculating numerators at

higher values than they should. We are actively remediating these issues.
However, this means you should not attest to Promoting Interoperability measures
using Intergy for program year 2018. This applies to both MIPS Promoting
Interoperability and Medicaid Promoting Interoperability."

Greenway did not specify which of the newly identified "several Promoting

Interoperability measures" (i.e., Meaningful Use measures) were incorrect.  Greenway instructed

MIPS-eligible providers to submit a hardship application to the Government, which has the

effect of re-weighting 25% of the total MIPS score to the Quality component of the MIPS score.

Greenway instructed Medicaid eligible providers to wait until later to attest and stated that

Greenway would follow up in writing.

104.    On the same day, Greenway sent a nearly identical email concerning Prime Suite

to Prime Suite users.  *See Pulmonary Associates of Charleston v. Greenway Health, LLC*, No.

19-cv-167-TCB, Dkt. No. 15, First Amended Class Action Complaint, ¶ 103 (N.D. Ga. Jan. 14,

2020).  The similar timing and language suggest that Prime Suite and Intergy share errors to

common software code and/or backend functionality.

105.    In early 2019, Greenway alerted its customers that Intergy was miscalculating

dozens of CQMs.

106.    On March 16, 2019, Greenway informed its customers:

"we will not be releasing Intergy Practice Analytics v11.20.00.06. Our team is
working diligently through our end to end quality review process for each
measure to be released. We will issue an update to you on Monday, March 18th.
We will be including 36 measures in the release, which you can find on this
week's Town Hall slides on My Greenway."

107.    As of August 2019, only 23 of the 64 CQMs were available for use on Intergy.

108.    As of April 29, 2020, only 33 CQMs were available for use on Intergy for the

2019 reporting year.

109.    In July 2020, Greenway informed customers that no CQMs were certified for 2020 reporting and that it was targeting December 2020 (the last month of the year) for the release of those measures.

110.    Altamonte Pediatric is unable to identify the precise start date of the errors with dozens of CQMs.  Only Greenway has the detailed information regarding Intergy's source code and development to state precisely which version of Intergy introduced the errors and when.

### 4.    Greenway also admitted that Intergy had further errors with requirements relating to patient messaging and referrals.

111.    Under the Meaningful Use program, EHRs must be able to transmit and receive "transition of care/referral summaries" in connection with patient referrals.  45 C.F.R. § 170.314(b)(1).  EHRs also must enable patients and providers to exchange secure messages.  45 C.F.R. § 170.314(e)(3).  For end of year reporting, providers must demonstrate that certain thresholds were met in connection with the use of these features, and EHRs must be able to generate those statistics.

112.    In the fall of 2019, Greenway informed its customers that "we have uncovered issues that could result in your practice not being able to attest for 2018 Medicaid PI" in connection with these two requirements.  Greenway also explained that Intergy failed to properly keep records of these requirements.

113.    Altamonte Pediatric is unable to identify the precise start date of these errors. Only Greenway has the detailed information regarding Intergy's source code and development to state precisely which version of Intergy introduced the errors and when.

**J.      In late 2019, Greenway confirmed that Intergy provided "compromised data" for every Meaningful Use measure for the 2018 reporting year.**

114.    On December 6, 2019, Greenway's General Counsel Karen Mulroe sent an email to all Intergy customers admitting: "All Promoting Interoperability and electronic clinical quality measures (eCQMs) had compromised data in 2018." "Promoting Interoperability" is another name for the Meaningful Use program.

115.    Upon information and belief, these errors were not limited to 2018 and spanned back many years because there is no reason to believe that Greenway suddenly introduced errors in 2018 that caused every single Meaningful Use measure and CQM to suddenly generate compromised data. Many of the Meaningful Use measures that were in place in 2018 have been in place since Stage 1 of Meaningful Use in 2011.

**K.      Greenway still has not fixed all the measures required by the Meaningful Use program.**

116.    Greenway still has not fixed all of Intergy's nonconformities with the Meaningful Use program's requirements, despite repeatedly assuring customers since the fall of 2018 that Greenway would repair all of the issues. For example:

          a.      On October 4, 2018, Greenway's Vice President of Regulatory Affairs wrote to Altamonte Pediatric and all other customers: "Consistent with our renewed focus on quality and compliance, we are in the process of auditing Intergy's 2015 Edition of Certified EHR Technology to ensure conformance with the certification criteria issued by the Office of the National Coordinator for Health Information Technology (ONC). We will communicate any nonconformities and the associated corrective action plans at the conclusion of the audit through My Greenway and associated release notes. If we

discover patient safety or reimbursement nonconformities, you will also be notified promptly via email."

      b.    In a December 6, 2018 email from Greenway Product Manager Christina Slade to all customers announcing errors in several Meaningful Use measures, Greenway stated: "We are evaluating the technical and development requirements to bring these measures into compliance with CMS's most recent measure logic and will notify you when these changes are available."

      c.    On January 22, 2019, Greenway Customer Satisfaction Manager Jenny Jones wrote Altamonte to assure that Greenway was remediating issues with Intergy, stating: "We have now successfully fully tested 8 of the 12 measures used for Promoting Interoperability (Meaningful Use) and are working on finishing the other 4.  It is looking good to have the hotfix released very soon, but I do not have an ETA yet.  Once I do, I will reach out to you."

117.    Greenway has not fixed all the Meaningful Use errors in Intergy, however.

118.    A recent email update from Greenway to all customers dated July 24, 2020 states: "We're pleased to announce the release of Intergy Practice Analytics (IPA) v12.10. This release updates the Promoting Interoperability (PI) measures for both the MIPS and Medicaid PI programs to the 2020 versions of the measures. With the IPA v12.10 release, PI measures are certified for 2020, but the electronic clinical quality measures (eCQMs) are not yet certified for 2020. The eCQMs included in this version can be used to monitor and track 2020 performance for the MIPS and Medicaid PI programs but should not be used to report. Certification of the eCQMs is targeted for December 2020." In other words, even with the upgrade, Greenway has still not fixed the CQMs after more than a year of trying to do so.

119.    Accordingly, any replace and repair clause has failed of its essential purpose, particularly because Altamonte Pediatric has lost $68,000 in incentive payments while Greenway purportedly tried to repair Intergy for more than a year.

**L.    Greenway has not offered Altamonte or its customers a refund.**

120.    Any limited refund remedy provided for in Greenway's form contracts has also failed of its essential purposes because Greenway has not offered to refund the fees it charged Altamonte Pediatric during the time period of Intergy's noncompliance with the Meaningful Use program.

121.    Upon information and belief, Greenway has also failed to offer a refund to other Intergy customers.

**M.    Greenway's false statements and broken promises concerning Intergy injured Altamonte Pediatric and the Proposed Class and Subclasses.**

122.    Greenway's current and former customers, including Altamonte Pediatric, were injured insofar as Greenway's misrepresentations concerning Intergy's satisfaction of the certification criteria of the Meaningful Use program caused or contributed to them paying inflated prices for Intergy and related Greenway services or caused or contributed to them selecting or continuing to select Intergy as their EHR instead of other competing EHR products.

123.    Greenway's current and former customers, including Altamonte Pediatric, were injured insofar as Greenway promised that Intergy would satisfy the certification criteria of the Meaningful Use program, but Intergy did not satisfy many such criteria.  As a result, the software was less valuable, less functional, and more burdensome than Greenway promised it would be.

124.    Greenway's current and former customers, including Altamonte Pediatric, were injured insofar as deficiencies in Intergy introduced new risks of errors in the process of treating patients or prescribing medication.

125.    Greenway's current and former customers, including Altamonte Pediatric, were injured insofar as deficiencies in Intergy increased the risk of the Government refusing to provide incentive payments, seeking to recoup incentive payments, or auditing Intergy users who previously obtained incentive payments.

126.    Greenway's current and former customers, including Altamonte Pediatric, were injured because users of Intergy are unable to submit statistics necessary to attest to satisfaction of the Meaningful Use program's requirements for the 2018 reporting period and because Greenway's errors called into question the accuracy of submissions from 2017 as well.  Whether Altamonte Pediatric will be able to submit reports consistent with the requirements of the Meaningful Use program for the 2019 reporting year remains to be seen, since those reports are due in 2020.

127.    Customers who submit information about CQMs in connection with the Quality component of MIPS suffered additional harm in 2018 and 2019 as a result of Intergy's errors concerning the calculation of CQMs because Greenway's last-minute announcement that Intergy incorrectly calculated dozens of CQMs had a detrimental impact on the planning for CQM reporting and on providers' composite MIPS scores.

128.    Users of Intergy in 2018 and 2019 were also injured because addressing and keeping track of the numerous newly disclosed errors in Intergy required many additional hours of labor by providers and their agents and/or payments to third parties to address the errors.

## V.    ALLEGATIONS SPECIFIC TO PLAINTIFF

### A.    Altamonte Pediatric relied upon Greenway's false and misleading statements.

129.    Altamonte Pediatric contracted with Greenway in 2013 for licenses to use Intergy and for support services.  As explained above, Altamonte Pediatric's contracts with Intergy are attached hereto as Exhibits 2 and 3.

130.    When entering into its contract with Intergy, Altamonte Pediatric reasonably relied upon Intergy's certification as a compliant EHR to form the assumption that Intergy met the requirements of the Meaningful Use program and would enable its providers to reliably report to the Government on the meaningful use of a certified EHR.

131.    Throughout the term of Altamonte Pediatric's agreement with Greenway, Greenway made multiple claims that Intergy was compliant with the certification criteria of the Meaningful Use program, and it provided instructions and training to Altamonte Pediatric's employees as to how to use Intergy to attest to the meaningful use of a certified EHR. Specifically, on December 2014, March 4, 2016, and January 11, 2018, Greenway made express representations to Altamonte Pediatric that ONC-ATCB certified Intergy as a complete EHR and that "[t]his important industry certification provides Greenway Health customers with the confidence of knowing that the software products they use have been tested against the most rigorous industry standards for functionality, security and interoperability, and allow them to successfully participate in the Centers for Medicare and Medicaid EHR Incentive Program." Greenway further stated that Intergy is "compliant and has been certified by an ONC-ATCB in accordance with the applicable certification criteria adopted by the Secretary of Health and Human Services." Ex. 1.

132.    Altamonte Pediatric reasonably relied on Greenway's express representations as to Intergy's ONC-ATCB certification and its compliance to allow Altamonte Pediatric to "successfully participate in the Centers for Medicare and Medicaid EHR Incentive Program."

133.    Altamonte Pediatric reasonably relied on Greenway's certification, widely distributed training materials and instructions in assuming that Intergy satisfied the requirements of the Meaningful Use program.  Altamonte Pediatric did not earlier exercise rights to demand compensation, repair, or termination under its contract with Greenway because it relied on Greenway's false and misleading statements.

134.    Altamonte Pediatric also reasonably relied on Greenway's express representations as to Intergy's compliance with Meaningful Use through its direct communications with Greenway from 2012 through 2017.

135.    The prices demanded by Greenway of Altamonte Pediatric and the market generally during the term of its agreement were inflated by Greenway's false and misleading statements about the functionality of Intergy.

136.    Altamonte Pediatric did not learn of Intergy's many errors and shortcomings until they were disclosed generally to Greenway's customers, as described above in Section IV.H. Health care providers like Altamonte Pediatric could not have identified the many defects that give rise to their claims until after Greenway finished its series of partial disclosures regarding Intergy's many errors (which may continue during the pendency of this case).

**B.    Greenway promised Altamonte Pediatric that Intergy satisfied and would satisfy the requirements of the Meaningful Use program.**

137.    As explained above in Section IV.G, Altamonte Pediatric's contract with Greenway states:

> "Guaranty. Vitera is committed to being a leader in the ambulatory HIT market. To that end, Vitera guarantees that during the Initial Subscription Services Term, Vitera will (1) continue to support the Subscription Services, including providing upgrades and updates if and when available, and (2) cause the Subscription Services to remain compliant with federal regulations (including those promulgated by the Centers for Medicare and Medicaid Services) establishing healthcare industry standards, in each case provided Customer upgrades to new versions of the Subscription Services in a timely fashion."

Ex. 3 at 1.  This promise required Greenway to ensure that Intergy remained compliant with the requirements of the Meaningful Use program.

138.    As explained above in Section IV.G, Altamonte Pediatric's Software License Agreement with Greenway contains a warranty stating in sum or substance:

> "Vitera warrants that, for the Software Warranty Period, the Vitera Software, as updated and used in accordance with the Documentation and in the COE, will operate in all material respects in conformity with the functional specifications described in the Documentation."

Ex. 2, Software License Agreement, at § 4.1.  Altamonte Pediatric's Subscription Services Agreement with Greenway similarly states: "Vitera warrants that, for the Subscription Services Warranty Period, the hosted Vitera Software will operate in all material respects in conformity with the functional specifications described in the Documentation."  Ex. 2, Subscription Services Agreement, at § 4.1.

139.    Documentation is defined by Altamonte Pediatric's Master Agreement with Greenway to mean: "the user instructions, release notes, manuals and on-line help files in the form generally made available by Vitera, regarding the use of applicable Software or Services, as updated by Vitera from time to time."  Ex. 2, Master Agreement, at 7.  As explained above in Section IV.G, Greenway's documentation for Intergy repeatedly and continuously assured that Intergy complied with the requirements of the Meaningful Use program.  Accordingly, Greenway promised to provide Software that operated in conformity with this specification.

140.    As explained above in Section IV.F, on December 2014, March 4, 2016, and January 11, 2018, Greenway made express representations to Altamonte Pediatric that Intergy is ONC-ATCB certified as a complete EHR that is "compliant and has been certified by an ONC-ATCB in accordance with the applicable certification criteria adopted by the Secretary of Health and Human Services." Ex. 1.

141.    As explained above in Section IV.F, Greenway made numerous representations to Altamonte Pediatric that Intergy complied with the Meaningful Use program through its widely distributed training manuals, release notes, newsletters, webinars, and also in its direct communications with Altamonte Pediatric.  Greenway's representations from 2013 through 2017 repeatedly reinforced and maintained that Intergy was Meaningful Use compliant.

### C.    Altamonte Pediatric was damaged by Greenway's fraud and breach of contract.

142.    Intergy did not satisfy the requirements of the Meaningful Use program during the term of Altamonte Pediatric's contract with Greenway, due to the errors and shortcomings described in Section IV.H above.

143.    In 2019, Altamonte Pediatric submitted Meaningful Use reports to Medicaid for the 2018 calendar year in reliance on data provided by Greenway.  At the time of submission, the data showed that all the submitting providers would qualify for incentive payments.  However, in the fall of 2019 after the submissions were made, Greenway informed Altamonte Pediatric of further issues (*see* section IV.H.4 above).  In October 2019, it became clear that eight of the submitting pediatricians and nurses would no longer qualify for incentive payments, but at this time it was too late to make any adjustments.  Because each provider was eligible for $8500 in 2018, Altamonte Pediatric lost $68,000 in incentive payments.

144.     Although Altamonte Pediatric was able to successfully attest for 5 providers despite the errors in Intergy, preparing the reports for these providers required significant additional work on the part of Altamonte Pediatric's employees.  The additional work involved tracking and understanding Greenway's many disclosures and altering Altamonte Pediatric's reporting strategy to either replicate unavailable information or use measures and statistics that Altamonte Pediatric had traditionally not used for reporting.

145.     Had Altamonte Pediatric known that Intergy did not satisfy the requirements of the Meaningful Use program, it would not have paid the artificially high rates demanded by Greenway for a deficient, noncompliant product.  Moreover, if Greenway had timely disclosed Intergy's errors and shortcomings, Altamonte Pediatric could have taken steps to remediate the problem, such as demanding that Greenway repair the errors and suing Greenway to recover damages.[5]  Because Greenway failed to timely disclose Intergy's errors and shortcomings, Altamonte Pediatric was deprived of these options and suffered damages.

146.     Altamonte Pediatric is also damaged because it has performed its obligations under the contract by paying Greenway's fees.  Because Greenway has not provided software meeting the contractually agreed upon specifications, Altamonte Pediatric is entitled to a refund of these payments.

147.     Altamonte Pediatric is also damaged because its employees have had to waste time and money learning how to use Intergy and working with Greenway to try to resolve Intergy's errors and shortcomings.

---

[5] Procuring a substitute EHR requires paying extensive switching costs, including installing new software, copying and migrating data, undergoing new training, and reducing patient loads (often for weeks).

**D.    Greenway misled Altamonte Pediatric for over a year by promising that Greenway would voluntarily make Altamonte Pediatric "whole" for damages caused by Intergy's errors.[6]**

148.    On or around January 29, 2019, Greenway employees met with Altamonte employees concerning various problems with Intergy, including Greenway's Meaningful Use errors.  Greenway President Kim O'Loughlin, Senior Director of Customer Satisfaction Jamal Wilburg, and Customer Satisfaction Manager Jenny Jones attended the meeting.  During the meeting Ms. O'Loughlin stated that Altamonte would be "made whole" if Intergy's errors caused Altamonte to lose incentive payments.

149.    On February 6, 2019, Greenway Customer Satisfaction Manager Jenny Jones assured Altamonte, in writing: "we are still working on the corrections for the Promoting Interoperability changes.  However, those will most likely be completed after March.  As [Greenway President] Kim [O'Loughlin] assured you during our meeting last week, Greenway will support you and make it right should you be unable to attain the Meaningful Use (Promoting Interoperability) incentive for reporting year 2018 or are penalized for the 2017 reporting year."

150.    On October 16, 2019, Altamonte Pediatric informed Greenway that it seemed increasingly likely that submitting successful Meaningful Use reports for the 2018 reporting year would not likely be possible for eight of its nurses and pediatricians.  The deadline for submitting these reports was October 31, 2019.  Altamonte requested that Greenway provide further information concerning the process for reimbursement for lost incentive payments for the 2018 reporting year.

151.    On October 16, 2019, Greenway provided an extensive list of document requests and demanded that Altamonte comply with the requests in order for Greenway to consider the

---

[6] *See supra* note 1.

claim for reimbursement.  Specifically, Greenway requested a statement verifying eligibility to participate in a Medicaid Meaningful Use program for 2018, written documentation from a state agency demonstrating that the reporting deadline passed, written documentation from a state agency that no further accommodation would be allowed to Greenway EHR users, copies of 2018 Medicaid Meaningful Use reports, proof that Altamonte remained active with a public agency, and documentation of participation in either a syndromic surveillance reporting registry or a specialized registry reporting registry (or exemption from either requirement).  Greenway did not offer to reimburse Altamonte for the expense of gathering this information.

152.    On October 29, 2019, Greenway added further unnecessary requirements to its litany of document demands, including: screenshots from Intergy, which Altamonte Pediatric was under no obligation to maintain. Greenway had access to all data that Greenway provided to or received from its customers through Intergy, and could have more easily maintained copies of any data that it deemed necessary to assess claims for reimbursement for Intergy's errors.

153.    On October 30, 2019, Altamonte provided all the information Greenway requested, at its own expense.  Altamonte noted however:

> "we would like to state for the record, that we have been and are currently compliant with ALL requirements for the state. All the information that you have requested is available to you from the state. We had submitted all necessary documentation and were originally approved on all our applications. That should have been proof enough of our eligibility. It was solely because of your errors and lack of oversight that our applications were retracted and placed in an 'incomplete' status awaiting corrections on your part. Our initial submissions were placed in good faith with data that you certified was accurate.  We also want noted for the record, that 5 of our providers were able to meet the thresholds and therefore we were able to resubmit for them. However, because the data we submitted was based on manual reports created by you due to your inability to correct the dashboard, we stand a higher chance of being audited. If an audit should result in the denial of any or all these applications, we will expect that you will provide full and complete compensation for these providers as well. We trust that you will not delay the process for our compensation and will not continue to come up with requests for additional information. We would ask for

acknowledgement of receipt and acceptance of our documentation as well as a date that we can expect full and complete compensation."

154.    On October 30, 2019, an Altamonte employee spoke with Greenway Customer Satisfaction Manager Jenny Jones to assist her comprehension of materials provided by Altamonte in support of its claims, again at Altamonte's expense.  Following this conversation, Ms. Jones wrote to Altamonte:

> "I believe I have all documentation we need to have this processed and have forwarded it to the internal team reviewing these types of requests.  As I mentioned on the phone, it can take up to 8 weeks for the documentation to be reviewed, but I will check on the progress regularly and let you know when it has been done."

155.    After receiving all the information it requested, Greenway did not respond with any offer of compensation for over three months.

156.    In February 2020, Altamonte retained outside litigation counsel, who contacted Greenway about Altamonte's demand for compensation.  Outside litigation counsel contacted Greenway's outside attorneys and requested a tolling agreement from Greenway on February 16, 2020.  Outside counsel conferred telephonically regarding this request on February 18, 2020.

157.    On February 24, 2020, Greenway's outside counsel informed Altamonte Pediatric's outside counsel that Greenway would not agree to any tolling agreement.

158.    On February 25, 2020, Greenway offered to settle Altamonte Pediatric's claims for less than half of Altamonte Pediatric's lost meaningful use payments from 2018 and demanded broad legal releases in exchange for this inadequate offer.

159.    On February 27, 2020, Altamonte Pediatric rejected this offer, demanded that Greenway make Altamonte Pediatric whole consistent with Greenway's promises and provided Greenway until Tuesday March 3, 2020 to respond.

160.    On March 3, 2020, Greenway responded by standing on its inadequate settlement offer.

161.    Throughout this process, Greenway has never once offered compensation consistent with its promise to make Altamonte Pediatric whole.

162.    Upon realizing that Greenway was engaging in prejudicial delay and gamesmanship instead of good faith settlement negotiations, Altamonte Pediatric filed this lawsuit.

## VI.    CLASS ALLEGATIONS

### A.    The Proposed Class and Subclasses.

163.    Altamonte Pediatric proposes a class consisting of all people or entities who paid money to Greenway to purchase, license, or otherwise use Intergy between 2011 and the present. Altamonte Pediatric will refer to this proposed class as "the Proposed Class."  Altamonte Pediatric is a member of the Proposed Class.  The period of January 1, 2011 to the present is referred to as "the Class Period."

164.    Altamonte Pediatric proposes a subclass consisting of all people or entities who entered into, renewed, or elected not to terminate written contracts with Greenway for Intergy between January 1, 2011 and the present, and whose contracts contain a "Meaningful Use guarantee" stating in sum and substance:

> "Guaranty. Vitera is committed to being a leader in the ambulatory HIT market. To that end, Vitera guarantees that during the Initial Subscription Services Term, Vitera will (1) continue to support the Subscription Services, including providing upgrades and updates if and when available, and (2) cause the Subscription Services to remain compliant with federal regulations (including those promulgated by the Centers for Medicare and Medicaid Services) establishing healthcare industry standards."

Altamonte Pediatric will refer to this subclass as the "Guarantee Subclass."

165.    Altamonte Pediatric proposes another subclass consisting of all people or entities who entered into, renewed, or elected not to terminate written contracts with Greenway for Intergy between January 1, 2011 and present, and whose contracts contain a provision which states in sum and substance: "Vitera warrants that, for the Software Warranty Period, the Vitera Software, as updated and used in accordance with the Documentation and in the COE, will operate in all material respects in conformity with the functional specifications described in the Documentation." Altamonte Pediatric will refer to this subclass as the "Documentation Subclass."

166.    Excluded from any of the above proposed class definitions are:

a.    Any executive, officer, employee, consultant, or agent of Greenway;

b.    Greenway and any entities in which Greenway has a controlling interest, or which have a controlling interest in Greenway;

c.    Any entities in which Greenway's officers, directors, or employees are employed;

d.    Any of the legal representatives, heirs, successors, or assigns of Greenway;

e.    The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

f.    Any of Greenway's outside counsel and their immediate family.

**B.    The Proposed Class and Subclasses are so numerous that individual joinder is impractical.**

167.    Greenway claims that thousands of healthcare professionals used Intergy during the Class Period.

168.    Upon information and belief, there are thousands of members of the Proposed

Class and each of the proposed Subclasses.

**C.    Answering questions common to the Proposed Class and Subclasses will drive the resolution of this litigation, and common questions predominate over individual questions.**

169.    The answers to common questions will determine Greenway's liability to all (or

nearly all) Class Members.  Common questions to the Proposed Class and Subclasses include:

a.    Whether Greenway made the representations, guarantees, and promises set

forth above and substantially similar representations to Altamonte Pediatric and members

of the Proposed Class and Subclasses;

b.    Whether Greenway failed to disclose material information by withholding

the truth about its software's failure to satisfy the requirements of the Meaningful Use

program;

c.    Whether Greenway's false and misleading representations and omissions

artificially inflated the price of its software and services, causing Altamonte Pediatric and

the Proposed Class and Subclasses to overpay Greenway;

d.    Whether Greenway's representations to Altamonte Pediatric and the

Proposed Class and Subclasses were false, misleading or unfair;

e.    Whether Greenway owed duties to Altamonte Pediatric and the Proposed

Class and Subclasses, the scope of those duties and if it breached those duties;

f.    Whether Greenway fraudulently induced Altamonte Pediatric and the

Proposed Class and Subclasses into purchasing, licensing, or otherwise using their

software, and/or continuing to license or otherwise use their software, under false

pretenses, through material misrepresentations or material omissions;

g.      Whether Greenway breached its obligation to the Guarantee Subclass to "cause the Subscription Services to remain compliant with federal regulations (including those promulgated by the Centers for Medicare and Medicaid Services) establishing healthcare industry standards"; and

h.      Whether Greenway breached its obligation to the Documentation Subclass by providing software that did not "operate in all material respects in conformity with the functional specifications described in the Documentation."

**D.      Altamonte Pediatric's claims are typical of the claims of all class members.**

170.    Altamonte Pediatric is a member of the Proposed Class because it paid money to Greenway to purchase, license, or otherwise use Intergy between 2011 and the present.

171.    Altamonte Pediatric is a member of the Guarantee Subclass because it entered into, renewed, or elected not to terminate a written contract with Greenway for Intergy between January 1, 2011 and the present that states:

> "Guaranty. Vitera is committed to being a leader in the ambulatory HIT market. To that end, Vitera guarantees that during the Initial Subscription Services Term, Vitera will (1) continue to support the Subscription Services, including providing upgrades and updates if and when available, and (2) cause the Subscription Services to remain compliant with federal regulations (including those promulgated by the Centers for Medicare and Medicaid Services) establishing healthcare industry standards."

Altamonte Pediatric will refer to this subclass as the "Guarantee Subclass."

172.    Altamonte Pediatric is a member of the Documentation Subclass because it entered into, renewed, or elected not to terminate a written contract with Greenway for Intergy between January 1, 2011 and present that states:

> "Vitera warrants that, for the Software Warranty Period, the Vitera Software, as updated and used in accordance with the Documentation and in the COE, will operate in all material respects in conformity with the functional specifications described in the Documentation."

### E. **Altamonte Pediatric and its counsel will adequately represent the Proposed Class and Subclasses.**

173. Altamonte Pediatric will put the interests of the Class Members on equal footing with their own interests.

174. Altamonte Pediatric's counsel are highly experienced class action litigators who are well-prepared to represent the interests of the Class Members.

### F. **A class action is superior to individual actions.**

175. Greenway is a sophisticated party with substantial resources.

176. Prosecution of this litigation is likely to be expensive. In individual proceedings, the damages suffered by Altamonte Pediatric and the members of the Proposed Class and Subclasses may not be large enough to offset the costs of litigation.

177. Litigating common issues through a class action is likely more efficient than litigating multiple disputes involving the same questions separately.

## VII. **CLAIMS FOR RELIEF**

### COUNT I – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA), F.S. CH. 501, PART II.

### (ON BEHALF OF ALTAMONTE PEDIATRIC AND THE PROPOSED CLASS)

178. As explained in Sections II.A and V above, Altamonte Pediatric and the Proposed Class are "consumers" under Fla. Stat. Ann. § 501.203.

179. As explained in Sections IV.D – IV.I, Greenway engaged in unfair and deceptive acts and practices by, for example, (1) falsely stating to Altamonte Pediatric and the Proposed Class that Intergy currently satisfied the certification criteria of the Meaningful Use program and that Intergy is "compliant," (2) making false statements to its accredited certification body in order to fraudulently obtain an unearned certification of compliance with the criteria of the Meaningful Use program, and (3) concealing from Altamonte Pediatric and the Proposed Class

56

the truth about Intergy's failure to satisfy the certification criteria of the Meaningful Use program even while it repeatedly distributed written materials to Altamonte Pediatric and other customers that gave the overall impression that Intergy could be used for filing Meaningful Use and Quality reports with the Government.

180.    As explained above, Greenway's deceptive trade practices caused Altamonte Pediatric and the Proposed Class to suffer damages by, for example, (1) causing Altamonte Pediatric and the Proposed Class to pay inflated prices for Greenway's product, (2) causing or contributing to Altamonte Pediatric's and the Proposed Class's decision to contract with Greenway instead of one of its competitors, (3) causing or contributing  to Altamonte Pediatric's and the Proposed Class's decision to renew contracts with Greenway instead of one of its competitors, (4) causing Altamonte Pediatric and the Proposed Class to lose the benefits of reporting on the meaningful use of a certified EHR, and (5) causing Altamonte Pediatric and the Proposed Class to expend out-of-pocket expenses, time, and other resources to cure or cope with the many deficiencies in Greenway's software.

## **COUNT IV[7] – BREACH OF WRITTEN CONTRACT**

## **(ON BEHALF OF PLAINTIFF AND THE GUARANTEE SUBCLASS)**

181.    Altamonte Pediatric has performed all its obligations under the contract, including paying Greenway's fees.

182.    All conditions precedent have been satisfied, including the provision of written notice.

183.    As explained above, Altamonte Pediatric and the Guarantee Subclass entered into contracts with Greenway stating, in sum or substance, that: "Guaranty. Vitera is committed to

---

[7] This Amended Complaint retains the original count numbers.

being a leader in the ambulatory [Health Information Technology] market. To that end, Vitera guarantees that during the Initial Subscription Services Term, Vitera will (1) continue to support the Subscription Services, including providing upgrades and updates if and when available, and (2) cause the Subscription Services to remain compliant with federal regulations (including those promulgated by the Centers for Medicare and Medicaid Services) establishing healthcare industry standards."

184.    As explained above, Greenway's software did not satisfy many requirements of the Meaningful Use program for years.  Greenway therefore breached the guarantee described in the preceding paragraph.

185.    As explained above, Greenway also breached the implied covenant of good faith and fair dealing, which is implied in every contract, by for example, (1) falsely stating to Altamonte Pediatric and the Proposed Class that its software currently satisfied the certification criteria of the Meaningful Use program, (2) making false statements to its accredited certification body in order to fraudulently obtain an unearned certification of compliance with the criteria of the Meaningful Use program, (3) concealing from Altamonte Pediatric and the Proposed Class the truth about its software's failure to satisfy the certification criteria of the Meaningful Use program, (4) failing to timely or reasonably redress non-compliant aspects of its software, (5) encouraging Altamonte Pediatric and the Proposed Class to attest for Meaningful Use incentive payments without informing them that Greenway was not compliant with the certification criteria of the Meaningful Use program, (6) failing to completely or timely disclose many of the problems with its software, and (7) recklessly failing to test Intergy with reasonable diligence during development of software code and updates thereto.

186.    As explained above, the breaches of contract by Greenway, including the breach of the implied covenant of good faith and fair dealing, have injured and harmed Altamonte Pediatric and the Guarantee Subclass and have proximately caused them damages.

### COUNT V – BREACH OF WRITTEN CONTRACT

### (ON BEHALF OF PLAINTIFF AND THE DOCUMENTATION SUBCLASS)

187.    Altamonte Pediatric has performed all its obligations under the contract, including paying Greenway's fees.

188.    All conditions precedent have been satisfied, including the provision of written notice.

189.    As explained above, Altamonte Pediatric and the Documentation Subclass entered into contracts with Greenway stating, in sum or substance, that:  "Vitera warrants that, for the Software Warranty Period, the Vitera Software, as updated and used in accordance with the Documentation and in the COE, will operate in all material respects in conformity with the functional specifications described in the Documentation."

190.    As explained above, contrary to the functional specifications in Greenway's Documentation, Greenway's software did not satisfy many certification criteria of the Meaningful Use program for many years.  As such, Greenway breached its obligation to provide software that operated in all material respects in conformity with the functional specifications described in its Documentation.

191.    As explained above, Greenway also breached the implied covenant of good faith and fair dealing, which is implied in every contract, by, for example, (1) falsely stating to Altamonte Pediatric and the Proposed Class that its software currently satisfied the certification criteria of the Meaningful Use program, (2) making false statements to its accredited certification

body in order to fraudulently obtain an unearned certification of compliance with the criteria of the Meaningful Use program, (3) concealing from Altamonte Pediatric and the Proposed Class the truth about its software's failure to satisfy the certification criteria of the Meaningful Use program, (4) failing to timely or reasonably redress non-compliant aspects of its software, (5) encouraging Altamonte Pediatric and the Proposed Class to attest for Meaningful Use incentive payments without informing them that Greenway was not compliant with the certification criteria of the Meaningful Use program, (6) failing to completely or timely disclose many of the problems with its software, and (7) recklessly failing to test Intergy with reasonable diligence during development of software code and updates thereto.

192.    As explained above, the breaches of contract by Greenway, including the breach of the implied covenant of good faith and fair dealing, have injured and harmed Altamonte Pediatric and the Documentation Subclass and have proximately caused them damages.

## PRAYER FOR RELIEF

WHEREFORE, Altamonte Pediatric and members of the Proposed Class and Subclasses seek the following forms of relief:

a.    An order certifying the Proposed Class under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), appointing Altamonte Pediatric and their counsel to represent the Class, and for notice to the Class to be paid by Greenway;

b.    An order certifying the Guarantee Subclass under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), appointing Altamonte Pediatric and their counsel to represent the Subclass, and for notice to the Subclass to be paid by Greenway;

c.    An order certifying the Documentation Subclass under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), appointing Altamonte Pediatric and their counsel to represent the Subclass, and for notice to the Subclass to be paid by Greenway;

d.    Rescission of the contracts between Greenway and Altamonte Pediatric and the Proposed Class;

e.   Actual damages suffered by Altamonte Pediatric and the Proposed Class and Subclasses;

f.   Exemplary and/or punitive damages to the Altamonte Pediatric and the Proposed Class and Subclasses;

g.   Restitution to Altamonte Pediatric and the Class of all monies wrongfully obtained by Greenway;

h.   Altamonte Pediatric's reasonable attorneys' fees;

i.   Altamonte Pediatric's recoverable fees and expenses;

j.   Altamonte Pediatric's costs incurred;

k.   Pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

l.   Such other and further relief deemed just and proper under equity or law.

## JURY DEMAND

Altamonte Pediatric demands a trial by jury on all counts so triable.

Respectfully submitted this 18th day of September, 2020.

VARNELL & WARWICK, P.A.

BY:/S/ JANET R. VARNELL
Janet R. Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
Matthew T. Peterson, FBN: 1020720
Erika Willis, FBN: 100021
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com
mpeterson@varnellandwarwick.com
ewillis@varnellandwarwick.com
kstroly@varnellandwarwick.com

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
Email: jselbin@lchb.com

John T. Nicolaou
Email: jnicolaou@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Fax: (212) 355-9592

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Mark P. Chalos
Email: mchalos@lchb.com
150 Fourth Avenue, North, Suite 1650
Nashville, TN 37219-2423
Telephone: (615) 313-9000
Fax: (615) 313-9965

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
Michael J. Brickman (SC Bar No. 000874)
Nina Fields Britt (SC Bar No. 68294)
James C. Bradley (SC Bar No. 16611)
1037 Chuck Dawley Blvd., Bldg. A (29464)
Post Office Box 1007
Mount Pleasant, South Carolina 29465
Telephone: (843) 727-6500

BADHAM & BUCK, LLC
Brett Ialacci (AL Bar No. ASB-7679-E67I)
Email: bialacci@badhambuck.com
2001 Park Place, North Suite 500
Birmingham, AL 35203
Telephone: (205) 521-0036

***Attorneys for Altamonte Pediatric Associates, P.A.***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of September, 2020, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Janet R. Varnell
**Janet R. Varnell**
