IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ALTAMONTE PEDIATRIC ASSOCIATES, P.A., a Florida Corporation,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>GREENWAY HEALTH, LLC, a Delaware Limited Liability Company,<br><br>　　　　　　　Defendant. | CIVIL ACTION<br><br>(CLASS ACTION)<br><br>Case No. 8:20-cv-00604-VMC-JSS |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND TO AMEND THE COMPLAINT

# TABLE OF CONTENTS

Introduction ...................................................................................... 1

Background and Procedural History ..................................................... 1

Summary of Settlement Terms ............................................................ 4

Legal Standard .................................................................................. 4

Argument .......................................................................................... 5

    I.    The Court Will Be Able to Approve the Settlement as Fair, Reasonable, and Adequate. ....................................................... 5

        A.    Class Counsel and the Settlement Class Representatives Have Adequately Represented the Class. ................................. 7

        B.    The Settlement Is the Result of Arm's Length Negotiations. ......................................................................... 8

        C.    The Relief for the Class is Substantial. ..................................... 9

    II.    The Court Will Be Able to Certify the Class for Settlement Purposes upon Final Approval. ................................................. 16

        A.    The Settlement Class Meets Rule 23(a)'s Requirements. .......... 17

        B.    The Settlement Class Meets Rule 23(b)(3)'s Requirements. ....... 21

    III.    The Proposed Notice Plan Should Be Approved. ............................ 24

    IV.    Leave to Amend the Complaint Should Be Granted. ......................... 26

Conclusion ....................................................................................... 26

Local Rule 3.01(g) Certificate ............................................................ 28

## TABLE OF AUTHORITIES

**Cases**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
    321 F.R.D. 688 (S.D. Fla. 2017) ........................................................................ 19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................... 17, 24

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
    568 U.S. 455 (2014) ........................................................................................ 22

*Amin v. Mercedes-Benz USA, LLC*,
    No. 1:17-cv-1701 (N.D. Ga. Mar. 12, 2020) ..................................................... 26

*Barron v. Snyder's-Lance, Inc.*,
    2016 WL 3913571 (S.D. Fla. Feb. 12, 2016) .................................................... 26

*Belin v. Health Ins. Innovations, Inc.*,
    357 F.R.D. 544 (S.D. Fla. 2021) ............................................................... 18, 19

*Cherry v. Dometic Corp.*,
    986 F.3d 1296 (11th Cir. 2021) ................................................................ 17, 24

*Dorado v. Bank of Am., N.A.*,
    No. 1:16-cv-21147, 2017 WL 5241042 (S.D. Fla. Mar. 24, 2017) ........................ 8

*Family Med. Pharm., LLC v. Trxade Grp., Inc.*,
    No. 15-cv-590, 2017 WL 1042079 (S.D. Ala. Mar. 17, 2017) ............................ 13

*Fla. Educ. Ass'n v. Dep't of Educ.*,
    No. 4:17-cv-414, 2019 WL 8272779 (N.D. Fla. Nov. 4, 2019) ............................. 7

*Fruitstone v. Spartan Race, Inc.*,
    No. 20-cv-20836, 2021 WL 2012362 (S.D. Fla. May 20, 2021) ................ 8, 17, 24

*Hanley v. Tampa Bay Sports & Ent. LLC*,
    No. 8:19-cv-550, 2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) .......................... 15

*Harvey v. Hammel & Kaplan Co.*,
    No. 3:19-cv-640, 2020 WL 7138568 (M.D. Fla. Dec. 7, 2020) ........................... 16

*Hudson v. Libre Tech. Inc.*,
    No. 3:18-cv-1371, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ......................... 16

*Hummel v. Tamko Bldg. Prods., Inc.*,
    303 F. Supp. 3d 1288 (M.D. Fla. 2017) ............................................................ 12

*In re Blue Cross Blue Shield Antitrust Litig.*,
    No. 2:13-cv-20000, 2020 WL 8256366 (N.D. Ala. Nov. 30, 2020) ................... 6, 12

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995) ................................................................. 13

*In re Checking Acct. Overdraft Litig.*,
   No. 1:10-cv-22190, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020) ...................... 12

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   ___ F.3d ___, 2021 WL 2250845 (11th Cir. June 3, 2021) .......................... 6, 14, 15

*In re Health Ins. Innovations Sec. Litig.*,
   No. 8:17-cv-2186, 2021 WL 1341881 (M.D. Fla. Mar. 23, 2021),
   *R&R adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) ........................passim

*In re MCO Wash, Inc.*,
   55 B.R. 159 (Bankr. E.D.N.Y. 2016) ................................................................ 10

*In re Ridgeway*,
   No. 16-br-10643, 2018 WL 1116531 (Bankr. E.D. La. Feb. 27, 2018) ................ 10

*Jackson v. Paycron, Inc.*,
   No. 8:19-cv-609, 2019 WL 2085430 (M.D. Fla. May 13, 2019) .................... 22, 23

*Jairam v. Colourpop Cosmetics, LLC*,
   No. 19-cv-62438, 2020 WL 5848620 (S.D. Fla. Oct. 1, 2020) ........................... 13

*Joffe v. GEICO Indem. Ins. Co.*,
   No. 18-cv-61361, 2019 WL 5078228 (S.D. Fla. July 31, 2019) ......................... 23

*Kuhr v. Mayo Clinic Jacksonville*,
   ___ F. Supp. 3d ___, 2021 WL 1207878 (M.D. Fla. Mar. 30, 2021) ................... 12

*Kuss v. Am. HomePatient, Inc.*,
   No. 8:18-cv-2348, 2020 WL 7406744 (M.D. Fla. Jan. 23, 2020) .......................... 6

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................................... 13

*Petersen v. Am. Gen. Life Ins. Co.*,
   No. 3:14-cv-100, 2019 WL 11093816 (M.D. Fla. Oct. 22, 2019).............. 10, 11, 16

*Renaissance Cruises, Inc. v. Glassman*,
   738 So. 2d 436 (Fla. 4th DCA 1999) ................................................................ 11

*Sos v. State Farm. Mut. Auto. Ins. Co.*,
   No. 6:17-cv-890, 2020 WL 5534483 (M.D. Fla. July 8, 2020) .......................... 23

*Teahl v. Lazy Flamingo, Inc.*,
   2016 WL 4136537 (M.D. Fla. June 21, 2016) ................................................... 26

*Teblum v. Physician Compassionate Care, LLC*,
   No. 2:19-cv-403, 2021 WL 397352 (M.D. Fla. Jan. 20, 2021) ........................... 21

*Townhouse Rest. of Oviedo, Inc. v. NuCO2, LLC,*
No. 2:19-cv-14085, 2020 WL 5440581 (S.D. Fla. Sept. 9, 2020) ........................ 11

*Tyson Foods, Inc. v. Bouaphakeo,*
136 S. Ct. 1036 (2016) ........................................................................................... 21

*Valley Drug Co. v. Geneva Pharms., Inc.,*
350 F.3d 1181 (11th Cir. 2003) ............................................................................. 20

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2012) .......................................................................................... 18, 19

*Williams v. New Penn Fin., LLC,*
No. 3:17-cv-570, 2019 WL 2526717 (M.D. Fla. May 8, 2019) ............................. 14

*Wolff v. Cash 4 Titles,*
No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .......................... 15

**Rules**

Fed. R. Civ. P. 15(a)(2) .............................................................................................. 26

Fed. R. Civ. P. 23(a)(3) .............................................................................................. 19

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 5, 24, 25

Fed. R. Civ. P. 23(e) .......................................................................................... 1, 7, 9, 15

Fed. R. Civ. P. 23(e)(1) ......................................................................................... 5, 24

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................... 5

Fed. R. Civ. P. 23(e)(1)(B)(ii) .................................................................................... 16

Fed. R. Civ. P. 23(e)(2) ................................................................................................ 5

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(B) ........................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................... 9

Fed. R. Civ. P. 23(e)(2)(C)(ii) .................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................................... 15

Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note ..................................... 6, 8, 13, 16

Fed. R. Civ. P. 23(e)(3) .............................................................................................. 15

Fed. R. Civ. P. 23(e)(5) ................................................................................................ 5

Fed. R. Civ. P. 23(h) .................................................................................................. 15

**Other Authorities**

2 *McLaughlin on Class Actions* § 6:7 (17th ed. Oct. 2020 update) ................................ 8

4 William B. Rubenstein, *Newberg on Class Actions* § 13:50 (5th ed. June
2021 update) ................................................................................................9, 23

7AA Wright, Miller & Kane, *Federal Practice & Procedure* § 1778 (3d ed
Apr. 2021 update) ............................................................................................ 22

## Introduction

Plaintiffs in three related putative class actions are pleased to announce a proposed class action settlement ("Settlement") to resolve these actions.[1] The Settlement provides meaningful and immediate monetary relief to class members—relief that is both substantial on its own terms and no less than equal to the likely outcome at trial. Plaintiffs thus respectfully ask the Court to find that the Settlement satisfies Rule 23(e)'s standard for preliminary approval, approve notice to the class, and set a schedule for final approval. The parties are prepared to submit a proposed order setting forth the deadlines for notice and administration should the Court wish to review one.[2]

## Background and Procedural History

In this case and two related cases pending in the Northern District of Georgia, Plaintiffs allege Greenway Health, LLC breached its contracts by providing electronic health record software ("EHR") that did not comply with standards codified in federal "Meaningful Use" regulations. In all cases, Plaintiffs allege they and a putative class of customers overpaid for software. They also allege that the problems with the software caused many customers out-of-pocket losses, including

---

[1] Altamonte is the plaintiff in this action; the plaintiffs in the related actions are Pulmonary Associates of Charleston PLLC, Neurological Specialties of West County, Inc., Medlock Pediatrics, P.C., C.R. Magness, M.D., and Valley OB-GYN Clinic P.C. Although the plaintiffs in the related actions are not yet party to this action—pending the Court's approval of the Motion to Amend the Complaint, *see infra* at 26—this Motion refers to all plaintiffs collectively as "Plaintiffs" or the "Settlement Class Representatives."

Defendant in this action is Greenway Health, LLC; defendants in the related actions are Greenway Health LLC and Greenway Health, Inc. This Motion refers to all defendants as "Greenway."

[2] Local Rule 3.01(f) discourages the filing of proposed orders without leave of Court.

lost incentive payments, wasted employee time, and payment of data-transfer and other switching costs.

Plaintiffs are medical practices and providers located across the United States. Plaintiffs and other customers contracted with Greenway to purchase or license Intergy or Prime Suite, EHR software products developed and marketed by Greenway. Generally, Greenway customers signed licensing agreements in which Greenway promised that its software complied with the federal government's "Meaningful Use" ("MU") standards.

Starting in September 2018 and continuing into 2019, Greenway disclosed issues with Intergy's and Prime Suite's compliance with the MU standards. Many of these compliance issues related to Intergy's and Prime Suite's ability to automatically calculate statistics that are used by various government programs for the purpose of disbursing incentive payments and/or adjusting reimbursements pursuant to the Medicaid and/or Medicare programs. Many customers also claim they incurred significant costs to switch EHRs because of the issues with Greenway's products.

Three pending lawsuits seek relief for a putative class based on these facts.

- *Pulmonary Associates of Charleston PLLC, et al. v. Greenway Health, LLC, et al.*, No. 3:19-cv-00167-TCB (N.D. Ga.), consolidates putative class action lawsuits filed by four current and former Prime Suite customers in October and November of 2019. The breach-of-warranty claims alleged by these customers have survived two motions to dismiss. The current class certification deadline is August 5, 2021.

- *Altamonte Pediatric Associates, P.A. v. Greenway Health, LLC*, Case No. 8:20-cv-00604 (M.D. Fla.), is a putative class action filed by an Intergy customer in March 2020. Claims for breach of warranty and violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) survived a motion

to dismiss. Class certification discovery closed on February 8, 2021 and the motion for class certification is fully briefed.

- *Valley OB-GYN Clinic P.C. v. Greenway Health LLC* ("*Valley*"), No. 3:20-cv-220-TCB (N.D. Ga.), is a putative class action filed by a former Prime Suite customer in December 2020. The complaint pleads contract and tort claims based upon Greenway's practice of charging its Prime Suite, Intergy, and SuccessEHS (a third Greenway EHR product) customers for data transfers upon termination of the business relationship. Greenway's motion to dismiss is fully briefed and pending decision.

The parties have engaged in significant discovery to date, serving dozens of discovery requests each. Plaintiffs have produced tens of thousands of documents. Greenway has produced over a million documents. Plaintiffs have deposed two of Greenway's employees. Greenway has taken depositions of every named plaintiff in *Altamonte* and *Pulmonary*. Both sides have produced expert reports in conjunction with class certification and took depositions of the experts. There has also been voluminous motion practice, with five motions (including Altamonte's motion for class certification) pending at the time of settlement.

Plaintiffs and Greenway have discussed settlement since the very beginning of this litigation, including informal discussions in October 2019 that ultimately led to a formal mediation with JAMS neutral Jed Melnick on May 7, 2020. After initial mediation efforts proved unsuccessful, this Court appointed the Hon. Gregory P. Holder (Ret.) to serve as mediator. The parties engaged in mediation sessions with Judge Holder on February 8, March 9, and June 8, 2021. With considerable assistance from Judge Holder, Plaintiffs and Greenway reached an agreement in principle at the June session. The parties negotiated over the subsequent days,

finalizing the agreement on July 2, 2021.

## Summary of Settlement Terms

The Settlement is the result of months of hard-fought litigation and arms-length negotiation and delivers substantial monetary relief to the Settlement Class that is tied closely to Plaintiffs' damages theories. The Settlement Class is defined as:

> Any Greenway customer who purchased any software bundle that included Prime Suite, purchased any software bundle that included the Intergy EHR, or paid Greenway for a Data Retrieval.

The Settlement Class runs from October 4, 2010 until the date of Preliminary Approval (the "Class Period"), and it excludes customers who previously entered into individual settlements that release the breach of contract and other claims asserted in the Class Actions.

The monetary payment totals $26,000,000. After payment of attorney's fees and litigation costs, one quarter of the remaining Settlement amount will go towards providing an automatic cash payment to compensate *all* customers for. The remaining three quarters is available in a claims process to compensate class members who show: (1) a loss of Meaningful Use incentive payments or diminished MIPS adjustments, (2) wasted employee time, or (3) data-transfer costs and other switching costs. In the event any money is unclaimed after the claims process, it will be added to the amount paid automatically to all customers; i.e., no money will revert to Greenway.

## Legal Standard

Federal Rule of Civil Procedure 23(e) provides that class actions "may be

settled . . . only with the court's approval." Rule 23(e) governs a district court's analysis of the fairness of a proposed class action settlement and creates a multistep process for approval. First, a court must determine that it is likely to (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (ii) certify the settlement class after the final approval hearing. *See* Fed. R. Civ. P. 23(e)(1)(B). Second, a court must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the proposed class, to give them an opportunity to object to or to opt out of the proposed settlement. *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). Third, after a hearing, the court may grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable, and adequate, and certify the settlement class. Fed. R. Civ. P. 23(e)(2).

Through this motion, Plaintiffs respectfully request that the Court set in motion the first two steps of this three-part process by providing preliminary approval of the Settlement and approving the issuance of notice to the class. The third step will be addressed at the final approval hearing.

**Argument**

**I.    The Court Will Be Able to Approve the Settlement as Fair, Reasonable, and Adequate.**

Before approving a class settlement, the court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23 was recently amended to articulate the "primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal."

Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note. These factors are whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[;] and (D) the proposal treats class members equitably relative to each other." *Kuss v. Am. HomePatient, Inc.*, No. 8:18-cv-2348, 2020 WL 7406744, at *6 (M.D. Fla. Jan. 23, 2020) (citing Fed. R. Civ. P. 23(e)(2)). Courts in this Circuit must also consider the so-called *Bennett* factors, which include:

> (1) "the likelihood of success at trial"; (2) "the range of possible recovery"; (3) "the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable"; (4) "the complexity, expense and duration of litigation"; (5) "the substance and amount of opposition to the settlement"; and (6) "the stage of proceedings at which the settlement was achieved."

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, ___ F.3d ___, 2021 WL 2250845, at *15 (11th Cir. June 3, 2021) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The amended Rule 23(e)(2) attempts to consolidate the "core concerns" animating the *Bennett* factors, but it does not displace the Eleventh Circuit's inquiry. *See* Fed. R. Civ. P. 23(e)(2), 2018 adv. comm. note; *Kuss*, 2020 WL 7406744, at *6.

Under the amended rule, a court is to preliminarily approve the settlement and direct notice to the class if it finds that "the court is likely to be able to finally approve the Settlement Agreement under Rule 23(e)(2)." *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000, 2020 WL 8256366, at *28 (N.D. Ala. Nov. 30, 2020); *see* Fed. R. Civ. P. 23(e)(1)(B)(i); *see also Fla. Educ. Ass'n v. Dep't of Educ.*, No. 4:17-cv-414, 2019 WL 8272779, at *5 (N.D. Fla. Nov. 4, 2019) (preliminary approval requires determination "that the settlement certainly *could* be approved as fair,

reasonable, and adequate"). The Settlement proposed here readily satisfies the criteria for preliminary approval.

### A.  Class Counsel and the Settlement Class Representatives Have Adequately Represented the Class.

Under Rule 23(e)(2), the Court first considers whether counsel for the class, as well as the class representatives, adequately represent the class. Fed. R. Civ. P. 23(e)(2)(A). This requirement is met. Class Counsel have extensive experience litigating nationwide consumer class actions.[3] Class Counsel have zealously advanced the interests of the Plaintiffs and the proposed Settlement Class. Following an extensive pre-filing investigation, Class Counsel defeated two motions to dismiss in both the *Altamonte* and *Pulmonary* matters. Since then, they have engaged in extensive discovery, deposing six witnesses and reviewing over one million documents. These efforts put Plaintiffs and the Settlement Class in a position to negotiate the Settlement with the help of an experienced mediator.

For their part, Plaintiffs have worked tirelessly on behalf of the Settlement Class members they seek to represent and more than meet the adequacy standard. They have worked closely with proposed Class Counsel at every stage of this litigation, answered dozens of written discovery requests, produced thousands of documents, and sat for day-long depositions. Each Plaintiff is a medical provider. Amidst the challenges of the global pandemic, Plaintiffs unflaggingly devoted their

---

[3] Plaintiff Altamonte's motion for class certification includes declarations from proposed Class Counsel concerning their experience. *Altamonte*, Dkts. 129–34. Class Counsel also includes Skaar & Feagle, LLP, who served as one of the firms in the *Pulmonary* matter. Skaar & Feagle's firm resume is attached to the accompanying declaration of Justin Holcombe.

time, along with expertise and experience in the medical field, to help Class Counsel move this litigation in a positive direction for the Settlement Class.

**B.**    **The Settlement Is the Result of Arm's Length Negotiations.**

To grant final approval, this Court will determine if the Settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). "There is a presumption of good faith in the negotiation process." *Fruitstone v. Spartan Race, Inc.*, No. 20-cv-20836, 2021 WL 2012362, at *7 (S.D. Fla. May 20, 2021).

The Court is likely to determine that the Settlement was the product of non-collusive, arm's length negotiations. The Settlement was reached under the close, careful supervision of Judge Holder, the Court-appointed mediator. Settlements "reached after a supervised mediation" are entitled to "a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (17th ed. Oct. 2020 update); *see* Fed. R. Civ. P. 23(e)(2)(B), 2018 adv. comm. note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *see also Fruitstone*, 2021 WL 2102362, at *7–8 (recounting parties' mediation efforts, which demonstrate that the settlement was the result of "hard-fought arm's length negotiations"); *Dorado v. Bank of Am., N.A.*, No. 1:16-cv-21147, 2017 WL 5241042, at *5 (S.D. Fla. Mar. 24, 2017) (granting final approval and noting that the "use of an independent mediator to resolve this case . . . confirm[s] that the Settlement is the result of arms-length negotiations without any collusion").

Furthermore, proposed Class Counsel negotiated the Settlement only after conducting months of discovery and analyzing over one million documents regarding Plaintiffs' allegations. The extensive discovery process in this case gave the parties "a decent sense of the strengths and weaknesses of their claims," thus reinforcing the adequacy of the bargaining process. 4 William B. Rubenstein, *Newberg on Class Actions* § 13:50 (5th ed. June 2021 update) [hereinafter "*Newberg*"]; *see id.* § 13:49 ("[I]f extensive discovery has been done, a court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information."); *see also In re Health Ins. Innovations Sec. Litig.*, No. 8:17-cv-2186, 2021 WL 1341881, at *9 (M.D. Fla. Mar. 23, 2021) ("extensive discovery" process supported finding that "the parties can adequately assess the strengths and weaknesses of their case and the benefits of entering into the Settlement"), *R&R adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021).

### C.  The Relief for the Class is Substantial.

Next, Rule 23(e)(2)(C) asks whether the relief provided for the class is "adequate," taking into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)." Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C) overlaps with several of the *Bennett* factors, specifically the

likelihood of success and the range of possible recovery for the class at trial,

measured against the trial's anticipated complexity, cost, and duration. *Petersen v.*

*Am. Gen. Life Ins. Co.*, No. 3:14-cv-100, 2019 WL 11093816, at *6 (M.D. Fla. Oct. 22,

2019). Either way, "the relevant inquiry is whether the proposed settlement affords

relief that falls within the range of reasonableness, and not whether it is the most

favorable possible result of litigation." *Id.* (alterations adopted) (quotation marks

omitted).

     All relevant factors are satisfied in this case. The Settlement provides

substantial, timely, and certain monetary relief to the Class Members. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Settlement's

proposed method of distribution is efficient and fair. And class counsel's anticipated

fee request is squarely in line with fee awards in this Circuit, particularly given that

any unawarded fees revert to the Class.

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

### 1.   The settlement relief outweighs the costs, risks, and delay of trial and appeal.

The Settlement provides valuable relief to the Class. *Every* Class Member who purchased Intergy or Prime Suite will be compensated for having overpaid. Class Members who did suffer additional harm will receive payment directly proportional to the amount of harm suffered. Not only will each Class Member receive a reasonable amount of compensation, but the Settlement achieves this outcome while "avoiding the risks, costs, and delay inherent in continuing to litigate the Action, including from contested class certification proceedings, additional discovery, dispositive motions, pretrial proceedings, trial and appeal." *Petersen*, 2019 WL 11093816, at *7.

Indeed, while Plaintiffs believe in the merits of their case, success at class certification, summary judgment, and trial is not guaranteed. For example, Greenway argues that FDUTPA may not apply to the claims of Intergy customers who lack a significant Florida connection. *Altamonte*, Dkt. 155 at 30–1. Although contrary to other authority, support for this argument exists. *Compare Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436, 439 (Fla. 4th DCA 1999) (applying FDUTPA to nationwide class), *with Townhouse Rest. of Oviedo, Inc. v. NuCO2, LLC*, No. 2:19-cv-14085, 2020 WL 5440581, at *7–8 (S.D. Fla. Sept. 9, 2020) (not applying FDUTPA to nationwide class). Greenway also argues that the sufficiency of notice is not susceptible to classwide proof. *Altamonte*, Dkt. 155 at 23–24; *see also Pulmonary*, Dkt. 65 at 8 (arguing on a motion to dismiss that Plaintiffs had not

notified Greenway of the defects in Prime Suite; although the District Court rejected that argument in Greenway's motion, Greenway was likely to renew this argument at class certification). This is a question subject to some dispute. *See, e.g.*, *Hummel v. Tamko Bldg. Prods., Inc.*, 303 F. Supp. 3d 1288, 1298 (M.D. Fla. 2017). Finally, Greenway has moved to strike one of Plaintiffs' industry expert's opinion relating to damages, arguing he is not qualified and his model of estimating an overcharge percentage is flawed for its reliance on comparator products' list prices. *Altamonte*, Dkt. 141 at 12–23. Although Greenway's success on this motion would not be case dispositive, it would lead to great delay while Plaintiffs reformulate their theory of class damages.

Plaintiffs dispute every one of these defenses. But it is obvious that the likelihood of success at trial is far from certain. Given this risk—as well as the certainty of delay associated with further litigation—the Settlement is more than reasonable and this factor is satisfied. *See, e.g.*, *Kuhr v. Mayo Clinic Jacksonville*, ___ F. Supp. 3d ___, 2021 WL 1207878, at *8 (M.D. Fla. Mar. 30, 2021) (approving settlement where, even though plaintiffs "appear[ed] to have a strong case of liability . . . , full recovery at trial was not assured"); *Blue Cross Blue Shield*, 2020 WL 8256366, at *16 (approving settlement where plaintiffs "faced a significant risk that their [expert findings and damages] models would be rejected"); *In re Checking Acct. Overdraft Litig.*, No. 1:10-cv-22190, 2020 WL 4586398, at *11 (S.D. Fla. Aug. 10, 2020) ("Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval.").



### 2. Settlement Class Members will obtain relief through a straightforward claims process.

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). This factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*, 2018 adv. comm. note.

The claims process will be straightforward and manageable. For compensation for an alleged overpayment, all Intergy and Prime Suite customers "will

automatically receive [their] allocated settlement amount" based on data already in Greenway's possession and have an opportunity to provide corrective information to address any gaps or inaccuracies in Greenway's records before the final allocation is determined and disbursed. *See Williams v. New Penn Fin., LLC*, No. 3:17-cv-570, 2019 WL 2526717, at *6 (M.D. Fla. May 8, 2019).

Class Members who suffered harm beyond an overpayment will be able to seek compensation through a claims process administered by an experienced settlement administrator. In order to make a claim, Class Members will only have to provide information about lost incentive payments, additional out-of-pocket expenses, or switching costs. This is information that all Greenway customers should maintain and keep accessible, and this process will allow for a fair and efficient distribution of the net settlement proceeds.

### 3. The terms of any proposed award of attorney's fees, including timing of payment, will be reasonable.

Proposed Class Counsel will move the Court for an award of reasonable attorneys' fees and reimbursement of their litigation expenses that is squarely in line with Eleventh Circuit precedent. Fed. R. Civ. P. 23(e)(2)(C)(iii). The total amount requested will not exceed 33 percent of the total economic value of the Settlement.[5]

---

[5] The Court does not need to approve any specific fee amount before granting preliminary approval, only determine whether the request raises any obvious red flags that would preclude settlement approval. But it bears emphasis that counsel's request is well within the norm for class settlements. "[I]n common fund settlements like this one, an attorney's fee award shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Equifax*, ___ F.3d ___, 2021 WL 2250845, at *19 (quotation marks omitted). Counsel's request is within the range of what courts hold to be reasonable in common-fund cases. *See, e.g.*, *Health Ins. Innovations*, 2021 WL

Class Counsel will also seek reimbursement of the expenses they incurred in this litigation. Class Counsel will file their fee application, which will provide the supporting basis for their request, sufficiently in advance of the Exclusion/Objection deadline. Settlement Class Members will thus have the opportunity to comment on or object to the fee application under Rule 23(h) prior to the Final Approval Hearing.[6]

### 4. The proposal treats Class Members equitably relative to each other.

The Settlement will be distributed fairly and equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). This subsection of Rule 23(e) determines "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*, 2018 adv. comm. note. Each Prime Suite and Intergy customer will receive automatic compensation based on the

---

1341881, at *12 ("[D]istrict courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund."); *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 8:19-cv-550, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (same); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012) (approving requested 33% fee as "entirely consistent with the percentage awarded in class actions in the Southern and Middle Districts of Florida"), *R&R adopted*, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012); *see also Equifax*, ___ F.3d ___, 2021 WL 2250845, at *22 ("average percentage award in the Eleventh Circuit is 'roughly one-third'" (quoting *Wolff*, 2012 WL 5290155, at *5)). Class Counsel's fee request will be properly supported and reflect Eleventh Circuit guidance on such requests.

[6] Per Rule 23(e)(3), Plaintiffs have attached a Confidential Supplement to the Settlement Agreement. This supplement contains a so-called "blow-up provision," which allows Greenway to walk away from the settlement if a certain number of class members opt out, as well as Greenway's non-public financial information. Plaintiffs have filed this document under seal and will justify the good cause for keeping this document sealed in a forthcoming motion. *See In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 254 & n.11 (11th Cir. 2009) (per curiam); *Health Ins. Innovations*, 2021 WL 1341881, at *7 & n.6.

length of its contract with Greenway and can claim additional compensation largely based on its number of EHR users or licensees as well as their out-of-pocket losses, and all customers can make the same claim for data retrieval costs, if applicable to their circumstances. This allocation plan ensures members of the proposed Class will receive meaningful compensation "commensurate with their respective" harm. *Harvey v. Hammel & Kaplan Co.*, No. 3:19-cv-640, 2020 WL 7138568, at *7 (M.D. Fla. Dec. 7, 2020); *see Hudson v. Libre Tech. Inc.*, No. 3:18-cv-1371, 2020 WL 2467060, at *9 (S.D. Cal. May 13, 2020) (approving settlement where payment formula was "logically proportional" to damages each class member suffered).

In addition "the scope of the release provision required by the Settlement does not operate in an inequitable manner" because the Settlement release is "limited to claims arising from the specific facts giving rise in th[e] action[s]": Greenway's failed promise that Intergy and Prime Suite complied with federal MU standards, as well as its requirement that customers pay for the return of their data. *Petersen*, 2019 WL 11093816, at *7.

## II.   The Court Will Be Able to Certify the Class for Settlement Purposes upon Final Approval.

Prior to granting preliminary approval to the Settlement, the Court must determine that it "will likely be able to" certify the class. Fed. R. Civ. P. 23(e)(1)(B)(ii). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Rule 23(a) factors and at least one subsection of

Rule 23(b) must be satisfied—except that the Court need not consider the

manageability of a potential trial, since the settlement, if approved, would obviate the

need for a trial." *Health Ins. Innovations*, 2021 WL 1341881, at *3; *see Equifax*, ___

F.3d ___, 2021 WL 2250845, at *16–17; *see also Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 620–21 (1997). The proposed Settlement Class here readily satisfies all

requirements of Rule 23(a), as well as those of Rule 23(b)(3).

### A.    The Settlement Class Meets Rule 23(a)'s Requirements.

**The class is ascertainable.** First, the Settlement Class satisfies the implied

ascertainability requirement. *See Fruitstone v. Spartan Race, Inc.*, No. 1:20-cv-20836,

2021 WL 354189, at *1 (S.D. Fla. Feb. 2, 2021). A class is "ascertainable" if it is

"adequately defined such that its membership is capable of determination." *Cherry v.

Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). The Settlement Class satisfies

this requirement because it is "based on objective criteria, all of which are

determinable from [Greenway's] business records." *Fruitstone*, 2021 WL 354198, at

*1. Greenway's records will show which customers licensed Prime Suite and Intergy

during the Class Period. Moreover, the settlement process includes an option for

class members to supplement Greenway's records as an additional check.

Greenway's records will also show which customers previously entered into

individual settlements that release the breach of contract and other claims asserted in

the Class Actions. As for out-of-pocket losses and data retrieval expenses, the

settlement process includes a straightforward claim process with objective eligibility

requirements and answers. Thus, the Class is ascertainable.

**Rule 23(a)(1): The Class is sufficiently numerous.** Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). This is a "low hurdle" that, as a general rule, is scaled by classes with 40 or more members. *Health Ins. Innovations*, 2021 WL 1341881, at *4.

Plaintiffs alleged that there are thousands of members of the Settlement Class. *Altamonte*, Dkt. 77 ¶168; *Pulmonary*, Dkt. 55 ¶99. Through discovery, Plaintiffs have confirmed the numerosity of the class. Nicolaou Decl., ¶14; *see Altamonte*, Dkt. 125 at 12 (mot. for class cert.).

**Rule 23(a)(2): Common questions of law and fact are present.** To obtain class certification, Plaintiffs must establish "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2012) (emphasis omitted); *accord Brink v. Raymond James & Assocs., Inc.*, 328 F.R.D. 437, 445 (S.D. Fla. 2018). This requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[E]ven a single common question will do." *Wal-Mart*, 564 U.S. at 359. Courts find commonality where, as here, the class claims arise from a defendant's uniform course of conduct. *See, e.g.*, *Belin v. Health Ins. Innovations, Inc.*, 357 F.R.D. 544, 557 (S.D. Fla. 2021); *Brink*, 328 F.R.D. at 445.

The Settlement Class claims are rooted in common questions of fact relating to promises Greenway made about Intergy and Prime Suite. These include:

- Whether and when Intergy and Prime Suite failed to meet the MU criteria;

- Whether Greenway promised that Intergy and Prime Suite would "operate in all material respects in conformity with the functional specifications described in the Documentation" and materially similar language, and whether Greenway's documentation assured MU compliance; and

- Whether Greenway's branding and marketing would lead a reasonable consumer to believe Intergy and Prime Suite could calculate eCQMs and other MU measures.

In addition, every Class Member who incurred data-extraction costs shares the common question of whether the customer paid Greenway money to extract medical records and billing data.

The answers to or analysis of these questions do not vary by Class Member. This case thus presents common questions of fact that, if litigated, would yield common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *Wal-Mart*, 564 U.S. at 350.

**Rule 23(a)(3): The Settlement Class Representatives' claims are typical of those of the Class Members.** Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This requirement serves one simple purpose: to assure that the named representatives' interests are aligned with those of the class." *Belin*, 337 F.R.D. at 557 (quotation marks omitted). Typicality is satisfied "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* "Typicality can exist despite substantial factual differences when there is a strong similarity of legal theories." *Id.*

(alteration adopted) (quotation marks omitted); *see A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 698 (S.D. Fla. 2017) (representative claims must be "reasonably co-extensive with those of absent class members," not "substantially identical").

The Settlement Class Representatives' claims are typical of other Class Members' claims. Altamonte and the absent class members who purchased Intergy and Prime Suite assert the same basic claim: Greenway promised Intergy and Prime Suite would comply with the MU criteria but delivered non-compliant software. Finally, Valley is a typical representative because it, like all members of the class who incurred data-extraction costs, paid money to Greenway to retrieve its own medical records and billing data. Typicality is satisfied.

**Rule 23(a)(4): The Settlement Class Representatives have protected and will continue to protect the interests of the Class.** Rule 23(a)(4)'s adequacy requirement is met where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy entails a two-part inquiry: "(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action." *Equifax*, ___ F.3d ___, 2021 WL 2250845, at *17. Both prongs are satisfied here.

First, the Settlement Class Representatives have no interests antagonistic to Settlement Class Members and will continue to protect the Class's interests in the implementation of the settlement. The Settlement Class Representatives also

understand their duties, have agreed to consider the interests of absent Settlement

Class Members, and have reviewed and uniformly endorsed the Settlement terms.

*See* Decls. of Altamonte, Dr. Magness, Medlock, NSWC, Pulmonary & Valley.

Second, the Settlement Class Representatives and their counsel "have

vigorously and competently represented the settlement class members' interests in

the action and, therefore, meet the standard for adequacy of representation." *Teblum*

*v. Physician Compassionate Care, LLC*, No. 2:19-cv-403, 2021 WL 397352, at *5 (M.D.

Fla. Jan. 20, 2021), *R&R adopted*, 2021 WL 391231 (M.D. Fla. Feb. 4, 2021). The

firms serving as proposed Class Counsel bring a wealth of experience in complex

civil litigation and class actions. *See Altamonte*, Dkts. 129–34 (firm resumes). They

have and will continue to commit substantial resources to this case. *See* Nicolaou

Decl. ¶¶6–16. Proposed Class Counsel have undertaken an enormous amount of

work, including a pre-filing investigation, litigating dispositive motions, and

extensive discovery to advocate for the Class. *Id.* They satisfy Rule 23(a)(4)'s

adequacy requirement, as well as the standard for appointment of class counsel

under Rule 23(g).

### B.    The Settlement Class Meets Rule 23(b)(3)'s Requirements.

Rule 23(b)(3)'s requirements are also satisfied because (i) "questions of law or

fact common to class members predominate over any questions affecting only

individual members"; and (ii) a class action is "superior to other available methods

for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**Predominance.** "The predominance inquiry asks whether the common,

aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation marks omitted). The rule requires "a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2014). Thus, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Jackson v. Paycron, Inc.*, No. 8:19-cv-609, 2019 WL 2085430, at *3 (M.D. Fla. May 13, 2019); 7AA Wright, Miller & Kane, *Federal Practice & Procedure* § 1778 (3d ed Apr. 2021 update).

Here, common questions predominate and there are few, if any, individualized factual issues. The core factual and legal questions involve the defendants' conduct: whether Greenway promised its software would comply with federal MU criteria, and whether Intergy and Prime Suite failed to comply with those criteria. This is also true for Class Members who incurred data-extraction costs, all of whom share the core question of whether Greenway refused to return its customers' medical records and billing data without receiving payment.

Common questions also predominate for damages because each Class Member's compensation will be determined based on information about its practice and its contract with Greenway, whether it lost any incentive payments, and whether it paid money to Greenway to retrieve its medical records and billing data or

otherwise incurred costs relating to switching to another EHR. Because damages will

be based on a calculation "that can be applied ministerially and formulaically across

the entire class," common questions predominate. *Joffe v. GEICO Indem. Ins. Co.*, No.

18-cv-61361, 2019 WL 5078228, at *5 (S.D. Fla. July 31, 2019); *see Sos v. State Farm.

Mut. Auto. Ins. Co.*, No. 6:17-cv-890, 2020 WL 5534483, at *10 (M.D. Fla. July 8,

2020) ("Here, the calculation of individual damages requires simple arithmetic.");

*Newberg* § 12:5 ("In general, formulae based on records tend to be simple and

mechanical such that if properly designed, courts will rarely deny certification, as

individual questions of damage will not overwhelm class damage issues.").

**Superiority.** Finally, a class action must be "superior to other available

methods for fairly and efficiently litigating the controversy." Fed. R. Civ. P. 23(b)(3).

In other words, the court must determine whether "the class action vehicle provides

the most efficient, effective, and economic means of settling the controversy."

*Jackson*, 2019 WL 2085430, at *4.

All of the superiority factors are satisfied. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

First, Plaintiffs are aware of no reason a class member would have to pursue separate

litigation regarding this matter. *See, e.g.*, *Health Ins. Innovations*, 2021 WL 1341881, at

*6 (superiority satisfied where there were "thousands of potential claims," it was

desirable to have "consistent adjudication of those claims," there was a "high

probability that individual members of the proposed class would not have a great

interest in controlling the prosecution of the claims," and there existed "economical

hurdles that would make litigating the issues individually less feasible"). Second,

there are no other consumer lawsuits against Greenway, so class certification would
serve the interests of judicial economy. Third, this Court is a desirable forum,
because Greenway is based in Florida and this Court is familiar with the issues of
this case.

The final factor of manageability is also satisfied. Although settling plaintiffs
need not demonstrate the manageability of the case at trial, *see Amchem*, 521 U.S. at
620; *Fruitstone*, 2021 WL 354189, at *4, it bears noting that the nondispositive factor
of administrative feasibility is satisfied because Greenway's customer data and
contracts will allow the Court to easily "locate the remainder of the class *after*
certification." *Cherry*, 986 F.3d at 1303–04; *see Holzman v. Malcolm S. Gerald & Assocs.*,
334 F.R.D. 326, 334 (S.D. Fla. 2020) (class feasible where "discernable" from
"known records").

*    *    *

Because Rule 23(a) and 23(b)(3) are satisfied, the Court should provisionally
certify the proposed Settlement Class for purposes of settlement and the issuance of
notice.

## III.    <u>The Proposed Notice Plan Should Be Approved.</u>

Before a class settlement may be approved, the Court "must direct notice in a
reasonable manner to all class members who would be bound by the proposal." Fed.
R. Civ. P. 23(e)(1)(B). Where certification of a Rule 23(b)(3) settlement class is
sought, the notice must also comply with Rule 23(c)(2)(B), which requires:

the best notice that is practicable under the circumstances, including individual

- 24 -

> notice to all members who can be identified through reasonable effort. The
> notice may be by one or more of the following: United States mail, electronic
> means, or other appropriate means. The notice must clearly and concisely state
> in plain, easily understood language: (i) the nature of the action; (ii) the
> definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that
> a class member may enter an appearance through an attorney if the member so
> desires; (v) that the court will exclude from the class any member who requests
> exclusion; (vi) the time and manner for requesting exclusion; and (vii) the
> binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176

(1974).

The proposed Notice program here was designed in consultation with the

proposed Settlement Administrator and meets all applicable standards. The Notice

program includes direct notice to Settlement Class Members sent via email and first

class U.S. Mail for all members for whom address information is available (which is

nearly the entire class), publication notice in *USA Today*, and the establishment of a

settlement website—where Settlement Class Members can view the full Settlement

Agreement, the Notice, and other key case documents, as well as submit claim

information. Moreover, the proposed forms of notice (Angeion Decl., Ex. A) inform

Settlement Class Members, in clear and concise terms, about the nature of this case,

the Settlement, and their rights, including all of the information required by Rule

23(c)(2)(B).[7] The Court should approve the proposed Notice program.

---

[7] Certain dates in the Notice are tied to the date that this Court grants preliminary approval of the
proposed settlements and issuance of notice, as reflected in the accompanying proposed order.
When those dates are known, the Settlement Administrator will fill in dates in the Notice consistent
with this Court's order.

IV.   **Leave to Amend the Complaint Should Be Granted.**

Pursuant to Federal Rule of Civil Procedure 15, Altamonte and the other Plaintiffs seek leave to file a consolidated amended complaint on behalf of a nationwide class to effectuate the Settlement. A party may amend its pleading with "the court's leave" and "the court should freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2). Greenway does not oppose this motion. The amended complaint seeks to add: (1) the plaintiffs in the *Pulmonary* and *Valley* Actions; (2) the causes of action in those two actions; and (3) the factual allegations in those two actions. The deadline to add parties to this action or to amend the pleadings was October 7, 2020. *See Altamonte*, Dkt. 60. In light of the Settlement, which finally resolves all three actions, good cause to amend the Complaint exists. *See* Order Granting Mot. for Preliminary Approval of Class Settlement at 7, *Amin v. Mercedes-Benz USA, LLC*, No. 1:17-cv-1701 (N.D. Ga. Mar. 12, 2020), ECF 75 (granting motion to amend); *Barron v. Snyder's-Lance, Inc.*, No. 0:13-cv-62496, 2016 WL 3913571, at *1 (S.D. Fla. Feb. 12, 2016) (same).

### Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1.  Grant preliminary approval of the Settlement Agreement;

2.  Grant leave to file the proposed amended complaint filed simultaneously herewith and deem it to be filed as of the date of the Court's order on this motion;

3.  Provisionally certify this case as a class action with the Settlement Class (1) defined as Any Greenway customer who purchased any software bundle that included Prime Suite, purchased any software bundle that included the Intergy EHR, or paid Greenway for a Data Retrieval, (2)

running from October 4, 2010 until the date of the Court's order on this
motion, and (3) excluding customers who previously entered into
individual settlements that release the breach of contract and other
claims asserted in the Class Actions and any judges to whom the Class
Actions are assigned, and any member of such judges' immediate
families;

4.  Appoint Plaintiffs Altamonte Pediatric Associates, P.A., Pulmonary
    Associates of Charleston PLLC, Neurological Specialties of West
    County, Inc., Medlock Pediatrics, P.C., C.R. Magness, M.D., and
    Valley OB-GYN Clinic P.C. as class representatives of the Settlement
    Class;

5.  Appoint Jonathan D. Selbin of Lieff Cabraser Heimann & Bernstein,
    LLP and Michael J. Brickman of Rogers, Patrick, Westbrook &
    Brickman, LLC as lead Class Counsel and the following attorneys as
    additional class counsel: Mark P. Chalos, Jason L. Lichtman, John T.
    Nicolaou, and Gabriel A. Panek of Lieff Cabraser Heimann &
    Bernstein, LLP; James C. Bradley, Nina Fields Britt, and Caleb M.
    Hodge of Rogers, Patrick, Westbrook & Brickman, LLC; Janet R.
    Varnell, Brian W. Warwick, Matthew T. Peterson, and Erika R. Willis
    of Varnell & Warwick, P.A.; Brett Ialacci of Badham & Buck, LLC; C.
    Cooper Knowles of The Law Office of C. Cooper Knowles, LLC;
    Timothy C. Bailey of Bailey Javins & Carter, LC; and Justin T.
    Holcombe and Kris Skaar of Skaar & Feagle, LLP;

6.  Appoint Angeion Group, LLC ("Angeion") to serve as Class
    Administrator;

7.  Approve the proposed Class Notice and Administration program,
    including the form and content of the proposed form notice template
    attached as Exhibit A to the Settlement Agreement, the claim process
    set forth in the Settlement Agreement, and the proposed Proof of Claim
    form template; and

8.  Enter a Scheduling Order consistent with the dates set forth below:

| Notice Date: | 21 days following entry of this Order |
| Last day for Class Counsel to file their Fee Application | 30 days following entry of this Order |
| Claims Deadline | 81 days following entry of this Order |
| Opt-Out Deadline | 81 days following entry of this Order |
| Objections Deadline | 81 days following entry of this Order |

| Last day for the Settling Parties to file a motion in support of final approval of the Settlement | 14 days before the Final Fairness Hearing |
|---|---|
| Last day for the Settling Parties to file oppositions to any objections and any reply papers in support of final approval of the Settlement or Class Counsel's Fee Application | 14 days before the Final Fairness Hearing |
| Final Fairness Hearing | At the Court's discretion |

## Local Rule 3.01(g) Certificate

Undersigned counsel certifies that they conferred with Greenway's counsel in a good faith effort to reach agreement on the relief requested herein, and Greenway does not oppose the requested relief.

Dated: July 2, 2021          Respectfully submitted,

By:     */s/ Jason L. Lichtman*

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
Jason L. Lichtman
John T. Nicolaou
Gabriel A. Panek
250 Hudson Street, 8th Floor
New York, NY 10013-1413
212.355.9500

ROGERS, PATRICK, WESTBROOK &
  BRICKMAN, LLC
Michael J. Brickman
Nina Fields Britt
James C. Bradley
Caleb Hodge
1037 Chuck Dawley Blvd., Bldg. A (29464)
Post Office Box 1007
Mount Pleasant, South Carolina 29465
843.727.6500

BADHAM & BUCK, LLC
Brett Ialacci
2001 Park Place, North Suite 500
Birmingham, AL 35203
205.521.0036

VARNELL & WARWICK, P.A.
Janet R. Varnell, FBN: 0071072
jvarnell@varnellandwarwick.com
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, FL 33602
352.753.8600

SKAAR & FEAGLE, LLP
Justin T. Holcombe (*pro hac vice* application pending)
jholcombe@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189

THE LAW OFFICE OF C. COOPER KNOWLES, LLC
C. Cooper Knowles
750 Hammond Drive
Building 12, Suite 350
Atlanta, Georgia 30328
770.668.2081

BAILEY JAVINS & CARTER, LC
Timothy C. Bailey
213 Hale Street
Charleston, West Virginia 25301
304.345.0346

*Attorneys for Plaintiffs and the Proposed Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2021, I electronically filed the foregoing Motion

for Preliminary Approval of Class Settlement and to Amend the Complaint and all

supporting Declarations and Exhibits with the Clerk of Court by using the Court's

CM/ECF system thereby serving all registered users in this case. I also certify that I

will serve counsel for Defendant via email with unredacted versions of the Motion

and supporting Declarations and Exhibits on this day, July 2, 2021, shortly after the

filing of redacted versions on ECF is complete.


                                           */s/ John T. Nicolaou*
                                           John T. Nicolaou (*pro hac vice*)