UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALTAMONTE PEDIATRIC
ASSOCIATES, P.A., a Florida
Corporation,

Plaintiff,

v.                                                          CASE NO.: 8:20-cv-00604-VMC-JSS

GREENWAY HEALTH, LLC, a
Delaware limited liability company,

Defendant.
_____/

# GREENWAY HEALTH, LLC'S
# MEMORANDUM IN SUPPORT OF
# MOTION FOR PRELIMINARY APPROVAL
# OF CLASS SETTLEMENT

Defendant, Greenway Health, LLC ("Greenway") submits this memorandum in support of Plaintiff's Motion for Preliminary Approval of Class Settlement (Doc. 210).[1]

**I.     Introduction**

---

[1] This memorandum references various defined terms from the Settlement Agreement. If the first letter of a term is capitalized (i.e., "Related Action"), Greenway incorporates the definition in the Settlement Agreement by reference. On July 9, 2021, Greenway filed a memorandum in support of Plaintiff's Renewed Unopposed Motion for Leave to Amend the Complaint. Doc. 231. Greenway's July 9 memorandum detailed the company's support for Plaintiff's request to file an Amended Complaint and consolidate the actions to be resolved by the proposed Settlement. Greenway files this additional memorandum to elaborate on its general support for Plaintiff's Motion for Preliminary Approval of Class Settlement.

126437863

Greenway, like Plaintiff, is pleased to announce the consummation of a proposed Settlement that, subject to this Court's approval, will resolve this Action and two additional putative Class Actions on a classwide basis.

In 2018, Greenway audited its Prime Suite and Intergy software and made a series of disclosures to customers that the then-current versions of the software contained certain glitches that, in some cases, prevented customers from being able to attest that they satisfied the requirements of government incentive programs, or limited their options for being able to do so. In the spring of 2019, and on subsequent occasions, Greenway represented to its customers that it intended to "do the right thing" for them. Greenway stands by this promise.

Prior to the filing of this Action, the related *Pulmonary* Action, and the *Valley* Action, Greenway established a program for customers to seek compensation directly from the company for lost or limited government incentive payments or other lost benefits allegedly tied to the software non-conformities. This proposed classwide Settlement is the culmination of Greenway's efforts to stand by its customers to resolve their disputes with the earlier versions of Prime Suite and Intergy and move forward to the future.

The Settlement is fair, adequate, and reasonable. Among other things, it provides for the establishment of a negotiated and professionally mediated fund of $26,000,000.00 for the benefit of Greenway customers. Moreover, after payment of attorney's fees and litigation costs, one quarter of the remaining Settlement amount will go towards providing an automatic cash payment to all Prime Suite and Intergy

customers. The remaining three quarters of the Settlement is available in a claims process to customers who contend they have suffered certain out-of-pocket losses and who satisfy certain eligibility requirements. The proposed Settlement will allow Greenway to fairly compensate all its customers who believe they have been damaged by non-conformities in earlier versions of its Prime Suite and Intergy software and put this chapter behind the company as it continues to partner with customers and focus on the future.

The Settlement was reached while Greenway was actively opposing class certification in this Action and the related *Pulmonary* Action and while a motion to dismiss the *Valley* Action was pending. The Settlement also was reached before this Court had ruled on summary judgment and *Daubert* motions or held a trial to determine whether Plaintiff's claims ultimately would be meritorious. These circumstances obviously presented risk to both sides.

Federal courts have consistently recognized an overriding public policy in favor of settlements, particularly the settlement of complex class actions like this one. *E.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012); *Bragg v. Bill Heard Chevrolet, Inc. – Plant City*, 2007 WL 2781105 (M.D. Fla. Aug. 28, 2007).

Because the settlement approval process for a class action necessarily involves multiple steps, Greenway summarizes the relief being requested by Plaintiff – all of which is unopposed by Greenway. Plaintiff seeks an order:

3

(a) Granting Plaintiff leave to file a proposed amended complaint that will bring consolidated claims on behalf of the named plaintiffs in this Action, the *Pulmonary* Action, and the *Valley* Action;

(b) Conditionally certifying the Settlement Classes, pursuant to Rule 23, Federal Rules of Civil Procedure, and solely for the purpose of effectuating this Settlement;

(c) Designating, for settlement purposes only, the Plaintiffs as representatives of the Settlement Class and Plaintiffs' attorneys as Class Counsel;

(d) Appointing Angeion Group, LLC as the Class Administrator to provide Class Notice and administer claims processing;

(e) Approving the proposed Class Notice, substantially in the form attached to the Settlement Agreement;

(f) Ruling that the communication of the Notice in the manner provided in the Settlement Agreement: (i) will fully satisfy the requirements of Rule 23, Federal Rules of Civil Procedure, due process, and applicable law; (ii) is the best notice practicable; and (iii) shall constitute due and sufficient notice of the Settlement and Fairness Hearing to members of the Settlement Class ("Class Members");

(g) Directing that, within 21 days after the date on which a preliminary approval order is entered, the Class Administrator shall send the Notice

126437863

>   to Class Members pursuant to the notice administration plan set forth in the Settlement Agreement;
>
> (h) Granting preliminary approval to the Settlement Agreement; and
>
> (i) Scheduling a final hearing to determine the reasonableness, adequacy, and fairness of the proposed settlement and whether it should be approved by the Court (the "Fairness Hearing").

At the Fairness Hearing, the parties will request the Court to approve the Settlement and enter Final Judgment.

## II. The Class Settlement Approval Process

As noted, the law favors and encourages the settlement of class actions. *Bennett*, 737 F.2d at 986 ("our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."). In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton*, 559 F.2d at 1331; *Nelson*, 484 F. App. at 434; *see also, e.g., Veal v. Crown Auto Dealerships, Inc.*, 2007 WL 2700969, at *2 (M.D. Fla. Sept. 13, 2007). Because of the public interest in settlement of class actions and the necessity to protect absent class members, a class action settlement requires court approval and notice to all class members in such manner as the court directs. Fed. R. Civ. P. 23(e).

Rule 23(e) creates a multistep process for approval of a class action settlement. First, the Court conducts a preliminary review to determine whether the proposed settlement is "within the range of possible approval," or, in other words, "whether

5

there is probable cause to notify the class of the proposed settlement." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (internal citations omitted); *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *4-5 (M.D. Fla. Nov. 19, 2009); *see, e.g.*, William B. Rubenstein, 4 *Newberg on Class Actions* § 13:10 (5th ed. 2014). Second, assuming that the Court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing at which all interested parties are afforded an opportunity to be heard. The ultimate purpose of the fairness hearing is to determine if the proposed settlement is fair, reasonable, and adequate to those who are affected by it. *See, e.g.*, *Bennett*, 737 F.2d at 986; *Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843 (11th Cir. 2011); C. Wright, A. Miller & M. Kane, *7B Federal Practice and Procedure* § 1797.1 at 77 (2005).

### III. Preliminary Approval Should Be Granted.

The proposed Settlement is well within the range of settlements that may be finally approved after a fairness hearing and thus should be preliminarily approved. At this preliminary stage, it is neither necessary nor appropriate for the Court to undertake a full and complete assessment of the fairness of the settlement. *See Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) ("By granting preliminary approval, the undersigned merely confirmed the proposed settlement fell within the range of possible approval, and communicated that proposal to the class"); 4 *Newberg on Class Actions* § 13:13 at 310 ("the goal of preliminary approval is for a court to determine whether notice of the proposed

6

126437863

settlement should be sent to the class, not to make a final determination of the settlement's fairness.").

Nonetheless, even a limited consideration of the various factors used to evaluate the fairness of a settlement demonstrates that the proposed Settlement easily falls within the range of settlements that may be ultimately approved by the Court. Rule 23(e) articulates the following factors for consideration: (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the proposal was negotiated at arm's length; (C) whether the relief provided for the class is adequate; and (D) whether the proposal treats class members equitably relative to each other. Doc. 210 at 12 (citing *Kuss v. Am. Homepatient, Inc.*, 2020 WL 7406744, at *6 (M.D. Fla. Jan. 23, 2020)). In addition, courts in the Eleventh Circuit must consider the following overlapping factors: (1) whether the settlement was negotiated at arm's length; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings at which settlement was reached and the status of discovery; (4) the factual and legal obstacles that could prevent the plaintiffs from prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the opinion of competent class counsel and the class members themselves. *See, e.g., Bennett*, 737 F.2d at 986; *In re EquiFax Inc. Customer Data Sec. Breach Litig.*, 2021 WL 2250845, at *15 (11th Cir. June 3, 2021); *Canupp*, 417 F. App'x at 845; *Nelson*, 484 F. App. at 434; *Federal Practice and Procedure* § 1797.1; 4 *Newberg on Class Actions* § 13:68.

Although Plaintiff has adequately addressed all of these factors in its motion, Greenway wishes to emphasize the following factors that strongly support preliminary approval here.

First, Plaintiff and Class Counsel arrived at an agreement with Greenway and its counsel during arm's length negotiations at multiple mediation sessions over the course of several months facilitated by Gregory P. Holder, a long-time Tampa judge and highly skilled mediator. *See, e.g.*, *In re Checking Acct. Overdraft Litigation*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of ... a highly experienced mediator, lends further support to the absence of collusion."); *see generally* 4 *Newberg on Class Actions* § 13:14 at 320 ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length. Courts also find an absence of collusion when settlement negotiations are conducted by a third-party mediator."). Moreover, it took three mediation sessions, on February 8, March 9, and June 8, 2021, for the parties to reach agreement after an earlier mediation in May 2020 did not yield an agreement. It was only through Judge Holder's continued efforts and the perseverance of the parties and their respective counsel that agreement was reached on the essential terms of settlement.

Second, the litigation is complex and has been protracted. This Settlement involves three putative class action cases that have already consumed almost two years, and if not settled, they likely will go on for considerable additional time (including appeals) at substantial additional expense. In evaluating this factor, courts should consider the vagaries of litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)).

Greenway agrees with Plaintiff that the litigation has been "hard-fought" and would continue to be so for the foreseeable future if a settlement had not been reached. Doc. 210 at 10. Accordingly, a settlement such as the one proposed by the Parties that will alleviate the need for judicial exploration of complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing merits preliminary approval.

The purpose of the third factor relating to the stage of the proceedings at which settlement occurred is "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Here, the Parties have conducted extensive fact and expert discovery. As noted in Plaintiff's motion, Greenway produced over one million documents. Both sides exchanged multiple expert reports on class certification, and over a dozen depositions have been

taken, including those of experts, in this Action and the *Pulmonary* Action. There can be no question that Plaintiff had access to an abundance of information to weigh the benefits of settlement against further litigation.

Fourth, the proposed Settlement avoids the uncertainties of contested litigation and provides the classes with meaningful and certain relief. *See Burrows v. Purchasing Power, LLC*, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (this factor weighs in favor of approval where "success at trial is not certain."). Here, Greenway absolutely agrees with Plaintiff that Plaintiff's success at class certification, summary judgment, and trial is not guaranteed. Indeed, Greenway continues to believe that its class certification and merits arguments are meritorious and even Plaintiff recognizes that substantial authority exists for denying class certification of the claims *in the litigation context* because of the substantial variation in Greenway customers' contracts regarding the requirements for notice of breach and opportunity to cure. *See* Motion at *17-18* (citing, *inter alia*, *Hummel v. Tamko Bldg. Prods., Inc.*, 303 F. Supp. 3d 1288, 1298 (M.D. Fla. 2017)). In this *settlement context*, however, Greenway is waiving its individualized contractual notice requirement, claims process, and limitations on liability and damages, in favor of the negotiated claims process and settlement payments set forth in the Settlement Agreement. Thus, the extensive record of facts and law developed in Greenway's memorandum in opposition to class certification that Greenway believes could – and should – compel the Court to deny certification in the litigation context do not apply here in the settlement context.

10

Fifth, the Settlement is within the range of possible recoveries, which extends from a finding of non-liability to a judgment providing for substantial monetary relief. *See Lipoma*, 406 F. Supp. 2d at 1323. In considering this factor, absent fraud, collusion or the like, the Court "should be hesitant to substitute its own judgment for that of counsel." *Canupp*, 417 F. App'x at 845 (citing *Cotton*, 559 F.2d at 1330); *Nelson*, 484 F. App. at 434. Moreover, the "Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipoma*, 406 F. Supp. 2d at 1323. Even a settlement that provides for a relatively low recovery can be quite reasonable, depending on the strengths and weaknesses of the parties' claims and defenses. *Id.*; *see, e.g.*, *Bennett*, 737 F.2d at 986; *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988). Here, Greenway believes the Settlement is quite generous, particularly in light of Greenway's contractual defenses to Plaintiff's expectation damages theory, in general, and demand for consequential damages in particular. In any event, the $26,000,000.00 Aggregate Settlement Fund, the automatic payment of a portion of the fund, and the streamlined claims process for recovery of out-of-pocket losses, is fair and reasonable in view of all the facts and circumstances. *See Nelson*, 484 F. App. at 434 (affirming district court's approval of class settlement and overruling of objections to adequacy of settlement consideration that "failed to account for … the plaintiffs' risk of losing at trial").

Sixth, the Settlement treats similarly situated Class Members alike. All users of Prime Suite and Intergy are entitled to an automatic payment based on the

number of years they are, or were, Greenway customers. Moreover, all customers who claim out-of-pocket expenses will be able to seek compensation for those expenses by submitting a claim. In addition, the claims process for all Class Members is streamlined and straightforward. The Class Administrator is providing pre-populated claim forms to be included with the Notice sent by U.S. Mail. The forms are also available at the dedicated website through use of the Class Member's "unique identifier." The pre-populated claim form will show whether a particular class member qualifies for a monetary payment and provides the Member with the ability to correct that information in the event and upon showing that it is incomplete. Even Class Members who do not receive pre-populated claim forms will be able to go to the Class Administrator website to make claims.

In addition, the claim form relies on streamlined avenues of proof, as opposed to the more rigorous methods that would be required at trial. Thus, the relaxed approaches to proof of claims substantially benefit Class Members and allow for a fair and efficient method of distributing net settlement proceeds.

Seventh, the Settlement is recommended by experienced class counsel, who are highly competent, with many years of experience litigating class actions including disparate impact cases. *See Nelson*, 484 F. App. at 434 ("In considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties"). Class Counsel have weighed the recovery the Settlement affords against the risks of continued litigation and other relevant variables in light of Greenway's defenses.

In sum, the foregoing analysis establishes – at a minimum – that the Settlement certainly *could* be approved as fair, reasonable, and adequate, which is all the law requires for preliminary approval. *See Fla. Educ. Ass'n v. Dep't of Educ.*, 2019 WL 8272779, at *5 (N.D. Fla. Nov. 4, 2019) (preliminary approval requires determination "that the settlement certainly *could* be approved as fair, reasonable, and adequate"). The Settlement, therefore, should be preliminarily approved and notice sent to the class. After the claims process has been completed, as specified in the Settlement Agreement, the benefits of the Settlement have been fully briefed, and objections (if any) have been considered at the Fairness Hearing, the Court will be in a position to determine whether the Settlement should be finally approved. Greenway is confident that, at the conclusion of that process, the Court will find the Settlement to be fair, reasonable and adequate, and will give the Settlement final approval.

## IV. Form and Method of Class Notice Are Adequate and Satisfy the Requirements of Rule 23.

Federal Rule of Civil Procedure 23(e) provides that "notice of the proposed ... compromise shall be given to all members of the class in such manner as the court directs." Due process likewise requires that class members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The method and manner of the notice process is "left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied*, 423

13

U.S. 864 (1975). There is no single way in which the notice must be transmitted. Nonetheless, "notice by mail to all of the identified class members ... will suffice." *Federal Practice and Procedure* § 1797.6 at 200; *see also, e.g.*, *Grunin*, 513 F.2d at 121 (publication notice not required when class members can be identified and individually notified by mail); *Holman*, 2009 WL 4015573, at *6 (approving notice by first class mail to most recent known address).

The Notice Plan specified by the Settlement Agreement constitutes reasonable and more than adequate notice to Class Members. As described above, under the Notice Plan in the proposed Settlement, individual Class Members will be sent notices of the Settlement by first class U.S. Mail to their last known address according to Greenway's most current records. As a failsafe, individual Class Members will also receive email notification to the extent Greenway has valid email addresses for them. In addition, given that Greenway may not have current, valid identifying information for some former customers, the Settlement Agreement calls for publication notice in *USA Today*. Thus, those medical practices that believe they are Class Members but did not receive mail or email notice will have the opportunity to make a claim if they can satisfy the requirements. At the website, Class Members and potential Class Members will be able to view and download copies of pleadings, orders, and documents relating to the Settlement. There will also be a FAQ page. Class Members with a need for legal advice will be able to speak with class counsel.

The notice itself is sufficient to inform Class Members of the terms of the Settlement and of the benefits available to them under it. The notice and claim form

126437863

are written in plain English and include among other things: (1) a description of the litigation and the claims being made; (2) a description of the proposed Settlement; (3) the names of counsel for the classes; (4) the Fairness Hearing date; and (5) a statement of the deadlines for: (a) opting out, (b) filing objections to the Settlement, and (c) submitting a claim. Moreover, the aggregate amount of the settlement fund is stated in the notice along with a description of the automatic payments and additional payments for which claimants may be eligible. The claim form to accompany the notice contains pre-populated information regarding each Settlement Class Member's years of eligibility for a settlement payment. Each Class Member who receives mail notice will also find his or her pre-populated claim form available online at the dedicated website, where it can be accessed by utilizing the class member's "unique identifier." This feature will enable Class Members to submit their claims electronically instead of by U.S. Mail.

The Settlement further allows Settlement Class Members 60 days from mailing of the notice to submit a claim, opt out, or object. "Courts have consistently held that 30 to 60 days between the mailing (or other dissemination) of class notice and the last date to object or opt out, coupled with a few more weeks between the close of objections and the settlement hearing, affords Class Members an adequate opportunity to evaluate and, if desired, take action concerning a proposed settlement." *Greco v. Ginn Development Co., LLC*, 635 F. App'x 628, 634 (11th Cir. 2015) (collecting cases).

In sum, Greenway joins Plaintiff's request that the Court find this notice plan to be appropriate and adequate under all of the attendant facts and circumstances, and thus, directs that notice be issued as provided under the Settlement Agreement. The mailing of the notice and subsequent providing of compensation to Settlement Class Members who do not opt out of the Settlement Class and who make claims will be conducted by Angeion Group, a nationally recognized class action administrator.

## V.   Conclusion

The Court will decide whether to grant final approval to the Settlement Agreement after notice is disseminated to all Settlement Class Members, after they have been given the opportunity to make claims, opt out, or object, and after this Court receives final presentations at a fairness hearing pursuant to the provisions of the attached proposed order. For now, Greenway joins the Plaintiff's request for preliminary approval of the Settlement Agreement.

Dated:   July 12, 2021            **CARLTON FIELDS, P.A.**

*/s/ Adam P. Schwartz*
Adam P. Schwartz
Florida Bar No. 83178
D. Matthew Allen
Florida Bar No. 866326
Joseph W. Swanson
Florida Bar No. 29618
Erin J. Hoyle
Florida Bar No. 117762
CARLTON FIELDS, P.A.
P.O. Box 3239

        Tampa, FL 33601-3239
        Telephone:  813.223.7000
        Facsimile:  813.229.4133
        E-mail:  aschwartz@carltonfields.com
        E-mail:  mallen@carltonfields.com
        E-mail:  jswanson@carltonfields.com
        E-mail:  ehoyle@carltonfields.com

        ***Counsel for Greenway Health, LLC***

126437863